# STATE of Wisconsin, Plaintiff-Respondent,

v.

# Steven R. HORTON, Defendant-Appellant.†

Court of Appeals

*No. 87-2444-CR. Submitted on briefs July 5, 1988.—Decided June 7, 1989.*

(Also reported in 445 N.W.2d 46.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Glenn L. Cushing,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *James M. Freimuth,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   Steven Horton, then seventeen years old, was charged with first-degree murder and attempted first-degree murder following the juvenile court's waiver of its jurisdiction. The case was tried to a jury, which convicted Horton of the lesser-included offenses of second-degree murder and endangering safety by conduct regardless of life, both while using a dangerous weapon. Horton raises four claims of error:   (1) the preliminary hearing was not timely held, resulting in the circuit court losing personal jurisdiction;   (2) the prosecutor used a peremptory strike to remove the one black potential juror in the jury pool from the petit jury, violating Horton's right to an impartial jury drawn from a fair cross-section of the community;   (3) the trial court refused to instruct the jury on the elements of manslaughter, imperfect self-defense, depriving him of his right to all lesser-included instructions that were reasonably supported by the evidence; and   (4) the evidence was insufficient to support the jury's finding that Horton's knife was designed as a weapon. We reject all four claims and affirm.

The variety of Horton's claims of error requires that we set forth the facts of this case in some detail. In April of 1986, Horton was arrested at his home after two youths, Brian Bacher and Michael Willems, were stabbed at a birthday party. Horton waived his right to remain silent and gave a lengthy statement in which he admitted stabbing both young men with a sharp-bladed steak knife. He stated that he was attacked by one of the youths and was able to wrestle him to the ground, but was then compelled to stab him when approached by a second young man who also seemed like he wanted to fight. After stabbing the second youth, Horton ran away.

Later, Horton accompanied the officers to look for his knife and its sheath, which he had thrown onto a golf course. The sheath was recovered but the knife was not found.

A delinquency petition was filed, as was a request that the juvenile court waive jurisdiction. Following the jurisdictional waiver, Horton made an initial appearance in adult court and bond was set at $100,000. Pursuant to sec. 970.03(2), Stats., a preliminary hearing was scheduled within ten days of the initial appearance, but before it could be held all proceedings were stayed by this court upon its acceptance of Horton's interlocutory appeal from the waiver determination.

During the pendency of the appeal process, the trial court scheduled intermittent status conferences to keep track of the case. At the November 14 conference, defense counsel informed the trial court that the Wisconsin Supreme Court now had the matter under advisement. The trial court then told the parties that the matter would next be scheduled for a January status conference. Defense counsel voiced no objection, noting that it would be at least thirty days until the file was remitted.

The file was remitted to the trial court and the stay of proceedings was lifted on December 4 or 5.[1] On January 8, 1987, a final status conference was held and a preliminary hearing scheduled for January 13. Defense counsel objected on the grounds that the preliminary hearing ought to have been scheduled no later than ten days after remittitur.

The preliminary hearing was held, and the case eventually proceeded to jury trial. Both parties agree that the jury pool from which Horton's petit jury was drawn contained only one black person. The prosecutor used his last peremptory strike to remove this person from the jury. Defense counsel moved for a mistrial. The trial court noted that the question would be closer if Horton were black, but in fact Horton is white. The motion for a mistrial was denied.

During its case-in-chief, the state put Horton's post-arrest statement in evidence by having one of the arresting officers read it to the jury. It also introduced the knife sheath recovered during the search of the golf course.

Horton took the stand in his own defense. He repudiated his post-arrest statement, asserting that he had made up the story because he was scared. In fact, he told the jury, he was extremely intoxicated when he stabbed the two youths, so intoxicated that he did not remember stabbing Bacher. He stabbed Willems, without knowing why, when Willems went to throw beer in his face. His weapon, he testified, was a fishing knife that he carried as a tool to assist him in vandalizing video machines.

Defense counsel submitted an instruction on the lesser-included offense of manslaughter, imperfect self-defense. The trial court did not give this instruction.

---

[1] The parties do not know on which date the file was remitted; the record is unclear.

The trial court did instruct the jury that Horton stood accused of committing first-degree murder and attempted first-degree murder while armed with a dangerous weapon. It defined "dangerous weapon" as any device designed as a weapon and capable of producing death or bodily harm. The jury determined that Horton's knife was a dangerous weapon.

Horton first argues that the circuit court lost personal jurisdiction over him when it did not schedule a preliminary hearing within ten days after remittitur. Section 970.03(2), Stats., states:

> The preliminary examination shall be commenced within 20 days after the initial appearance of the defendant if the defendant has been released from custody or within 10 days if the defendant is in custody and bail has been fixed in excess of $500. On stipulation of the parties or on motion and for cause, the court may extend such time.

Horton concedes that sec. 970.03 does not require a preliminary hearing within ten days of arraignment when that period is interrupted by an appellate court's stay of proceedings but asserts that sec. 970.03 does require a preliminary hearing within ten days of the record's remittitur to the circuit court. We disagree.[2]

Failure to hold a preliminary hearing within the statutory time limits results in a loss of personal jurisdiction. *Armstrong v. State,* 55 Wis. 2d 282, 285, 198 N.W.2d 357, 358 (1972). However, the right to a prelimi-

---

[2]Horton does assert that he moved the trial court to delay arraignment until after appellate resolution and that the inability to hold a preliminary hearing within ten days of arraignment is therefore not a problem of his creation. He does not argue, however, that denial of this motion was itself improper.

nary examination is purely a statutory right. *State v. Dunn,* 121 Wis. 2d 389, 394, 359 N.W.2d 151, 153 (1984). Application of a statute to undisputed facts is a question of law that we review *de novo. Tenpas v. DNR,* 148 Wis. 2d 579, 582, 436 N.W.2d 297, 298 (1989).

Because the right to a preliminary hearing is solely a statutory right, the statutory scheme or statutory declarations must govern. *State v. Solomon,* 158 Wis. 146, 149, 147 N.W. 640, 641 (1914). If the procedure argued by Horton does not fit into the statutory scheme, we will not read such a procedure into the statute. *See id.* at 150, 147 N.W. at 642.

Litigants do not know and cannot predict the date upon which appellate resolution will occur nor the date upon which the record will reach the trial court. Therefore, if a defendant undertakes an interlocutory appeal while he is in custody, he subverts one of the primary purposes of sec. 970.03(2), Stats.: providing an *expeditious* means for the discharge of an accused if it does not appear probable that he has committed the crime or crimes for which he is being held. *State ex rel. Klinkiewicz v. Duffy,* 35 Wis. 2d 369, 373, 151 N.W.2d 63, 66 (1967). It therefore appears to us that the reason for the ten-day provision—expeditious determination— disappears when an interlocutory appeal is successfully commenced prior to the preliminary hearing. We conclude that the appeal process is not contemplated by sec. 970.03(2). If proceedings are stayed by an appellate court before the preliminary hearing is held, sec. 970.03(2) sets no mandatory date upon which the preliminary hearing must be held.

A valid preliminary examination is an essential step in a criminal prosecution of a felony. *Gates v. State*, 91 Wis. 2d 512, 522, 283 N.W.2d 474, 478 (Ct. App. 1979). Whether some other statutory, or even constitutional, provision requires that the preliminary hearing be held after remittitur in a fashion more timely than occurred here has not been suggested by Horton. *See Dunn*, 121 Wis. 2d at 394 & n. 6, 359 N.W.2d at 153. We therefore do not address that issue.

As a second ground for reversal of his convictions, Horton argues that the state's use of a peremptory strike to remove the one black potential juror from the petit jury (the jury actually chosen) violated the Sixth Amendment of the United States Constitution and art. I, secs. 5 and 7 of the Wisconsin Constitution.

Horton begins his argument by acknowledging that an equal protection challenge to the state's use of its peremptory strike would fall. To show an equal protection violation based on peremptory strikes, a defendant must first show that he is a member of the systematically excluded group. *Batson v. Kentucky*, 476 U.S. 79, 96 (1986). Horton is white, the excluded juror black. Horton has therefore raised no equal protection challenge to the prosecutor's use of the peremptory strike.

The sixth amendment, on which Horton's challenge is grounded, guarantees a defendant the right to an impartial jury. Horton asserts that upon his showing a strike of all (in this case, one) black potential jurors, he has made a *prima facie* case that the sixth amendment guarantee was violated because the strike ensured that one segment of a fair cross-section of the community was not represented on his petit jury. We disagree.

257

The United States Supreme Court has interpreted the sixth amendment to require that a jury be drawn from a pool representing a fair cross-section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 530 (1975). That Court has, however, described the requirement as being of limited scope. *Lockhart v. McCree,* 476 U.S. 162, 173-74 (1986). Although it has never directly resolved the question, the Court is convinced that an extension of the fair cross-section requirement to petit juries would be unworkable and unsound. *Id.* at 174.

Many federal circuits hold that the sixth amendment is not offended by a use of peremptory challenges that removes a discrete segment of the community from a particular jury. Among these is the Seventh Circuit. *See Teague v. Lane,* 820 F.2d 832 (7th Cir. 1987), *aff'd on other grounds,* 109 S. Ct. 1060 (1989).[3] We are convinced that the majority position allows for an indifferent jury, is the more practicable, and does not violate the sixth amendment.

The *Teague* court, for example, first notes that the sixth amendment argument rests on the "mistaken assumption that the word 'impartial' as used in the sixth amendment requires that the petit jury reflect a cross-section of the community from which it is drawn." *Id.* at 837. The *Teague* court goes on to state that the right to a jury trial is a right to an *indifferent* jury and a right to *a fair possibility* for obtaining a jury constituting a representative cross-section of the community. *Id.* The state's use of its peremptory challenge in the instant case offended neither of these rights.

The *Teague* court found that Horton's position represents a potential for stretching out criminal trials by

[3]The Supreme Court did not address the sixth amendment issue in affirming this case. *Teague v. Lane,* 109 S. Ct. 1060 (1989).

making the voir dire a Title VII proceeding in miniature. *Id.* at 839. A nearly infinite number of distinct groups can be found in our heterogeneous society. There are Democrats and Republicans, young persons and old persons, white collar executives and blue collar laborers. *Lockhart,* 476 U.S. at 178. Horton's argument allows every defendant to block virtually any jury on the basis of a single peremptory strike. Everybody belongs to a group. Some peremptory strike is very likely to remove a potential juror fitting into some unique faction of the community. As the courts have recognized, the presence of that juror would not of itself ensure an indifferent jury, only a more heterogeneous one. That is not what the sixth amendment requires. A cross-section of the fair and impartial is more desirable than a fair cross-section of the biased and prejudiced. *Smith v. Balkcom,* 660 F.2d 573, 583 (1981), *modified,* 671 F.2d 858 (5th Cir.), *cert. denied,* 459 U.S. 882 (1982).

Horton urges us to decide the case on the basis of the Wisconsin Constitution. In support, he points to cases from other jurisdictions that permitted challenges to peremptory strikes on the basis of their state's constitutional guarantee of an impartial jury, beginning with *People v. Wheeler,* 583 P.2d 748, 761–62 (Cal. 1978).

This court has, however, previously expressly rejected the analysis urged here by Horton, finding it vague and uncertain under the United States Constitution. *State v. Grady,* 93 Wis. 2d 1, 12–13, 286 N.W.2d 607, 611–12 (Ct. App. 1979). We continue to adhere to that view under the Wisconsin Constitution as well. We find the position of the Seventh Circuit equally persuasive when applied to our state constitution's guarantee of an impartial jury.

We acknowledge that this court's interpretation of state law questions is independent of federal analysis of

analogous federal law. We may, however, look to federal law for guidance when deciding such questions. *State v. Bucheger,* 149 Wis. 2d 502, 508, 440 N.W.2d 366, 368 (Ct. App. 1989). We are persuaded that the sounder understanding of the right to an impartial jury, under both our state and federal constitutions, permits wholly arbitrary peremptory strikes from a venire made up of a fair cross-section of the community.

Horton next argues that the only evidence concerning the knife was his own in-court description of it as a fishing knife. He argues that the evidence was therefore insufficient to allow the jury to find beyond a reasonable doubt that the knife was designed as a weapon. He asserts that the sentence enhancement imposed pursuant to that jury finding must be erased. We disagree.

Whether a party has offered sufficient evidence to meet its applicable burden of proof is a question of law. *Seraphine v. Hardiman,* 44 Wis. 2d 60, 65, 170 N.W.2d 739, 742 (1969). Factual disputes are resolved in the light most favorable to the verdict. *State v. Lossman,* 118 Wis. 2d 526, 541, 348 N.W.2d 159, 166–67 (1984).

There was evidence, introduced by the state in the form of Horton's post-arrest statement, that the knife was a steak knife. The jury therefore had before it two different self-serving statements by Horton as to the knife's design. It was entitled to reject them both. *See Martin v. State,* 87 Wis. 2d 155, 163, 274 N.W.2d 609, 612 (1979).

The other evidence as to this knife, however, was that it had a long blade, was very sharp, and was carried in a sheath. A photograph of the sheath was State's Exhibit 16 and is contained in the record. Exhibit 16 shows a case that can accommodate a long-bladed object

and that has an extended backing against which could rest a hilt. There was thus circumstantial evidence that Horton's weapon followed the design of a dagger. Viewing the evidence in the light most favorable to the state, we find it sufficient to allow the jury to conclude beyond a reasonable doubt that the knife in question was designed as a weapon. *See State v. Stanfield,* 105 Wis. 2d 553, 564, 314 N.W.2d 339, 344 (1982). The jury had been instructed on circumstantial evidence and on how to evaluate such evidence. It was not obligated to reject the circumstantial evidence in favor of Horton's statements of the knife's purposes.

■

Finally, as grounds for reversing the second-degree murder conviction, Horton argues that the trial court erred as a matter of law when it failed to instruct the jury on the elements of manslaughter, imperfect self-defense, based on the post-arrest statement introduced by the state. We conclude that the issue is waived and affirm.

*State v. Gomaz,* 141 Wis. 2d 302, 324, 414 N.W.2d 626, 636 (1987), the supreme court held that errors based upon excluded jury instructions are preserved for appeal by objecting to the omission. Grounds for objection are stated with the requisite degree of particularity when counsel articulates as the basis for objection the omission of a particular instruction. *Id.* at 322, 414 N.W.2d at 635. The submission of alternative instructions will not alone suffice. *Id.* In the instant case, no such objections appear in the record.

In the only jury instruction discussion appearing in the record, the trial court first states, "[l]et the record reflect that they have been handed a packet of instructions. I didn't include any of the included offenses that [defense counsel] asked for, i.e. self-defense, manslaughter, self-defense, and homicide by reckless use. And I will

address myself later to that . . .." An unrelated discussion then took place. A few pages later, the trial court again initiated discussion on jury instructions, first noting that defense counsel wanted to place his objections on the record. The court then set out why it was not giving a self-defense instruction:

> I just feel that from the self-defense aspect, if Willems had come at the young Horton with a baseball bat or maybe a tire lug or something like that, something other than a plastic glass of beer, I certainly would read that.

The prosecuting attorney concurred:

> I think, your Honor, even if he would have come at him with his fists or just made aggressive motions than was testified to by the defendant, then it may have been appropriate.

The court then concluded:

> Well, that's how I looked at it. And that's why I'm not giving it. I don't think it raises that self-defense issue. But I may be wrong. And certainly somebody else will look at it. And if you wanted to add anything to that, [defense counsel], I would like you to do it at this time.

[Defense Counsel]:

> Just renew the same arguments and objections which I made yesterday.[4]

---

[4]While the court minutes would indicate that the previous day's jury instruction conference was recorded, no transcript of that conference is included in the record. Our review is limited to those portions of the record that are available. *In re Ryde,* 76 Wis. 2d 558, 563, 251 N.W.2d 791, 793 (1977).

Thus, the record in the instant case reveals that, although the trial court gave defense counsel an opportunity to put his objections on the record, counsel only stated that he was reaffirming the objections and arguments made the previous day. We have no way of knowing what those were, nor whether defense counsel concurred in the conclusion reached by the trial court as to the self-defense instructions.

A colloquy between the trial court and the prosecuting attorney regarding the propriety of giving a self-defense instruction submitted by the defense is insufficient to preserve the matter for review. There must be a particularized objection from counsel on the record. *Gomaz*, 141 Wis. 2d at 322, 414 N.W.2d at 635.

*By the Court.*—Judgment affirmed.