STATE of Wisconsin, Plaintiff-Respondent,

v.

Steven R. HORTON, Defendant-Appellant.†

Court of Appeals

*No. 93–3380. Submitted on briefs March 13, 1995.—Decided June 14, 1995.*

(Also reported in 536 N.W.2d 155.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Aschenbrener* of *Aschenbrener, Arnold & Artery, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J.   Steven R. Horton appeals from an order denying his § 974.06, STATS., postconviction motion for relief from a 1987 conviction for second-degree intentional homicide and endangering safety by conduct regardless of life. Horton, who is white, argues that his right to equal protection under the Fourteenth Amendment was violated when the prosecutor used a peremptory strike to remove the sole black person from the venire. Horton relies on *Powers v. Ohio*, 499 U.S. 400, 409-10 (1991), decided after his conviction was final, which held that a defendant has standing under the Equal Protection Clause to object to a race-based

exclusion of potential jurors whether or not the defendant and excluded jurors share the same race.

Recognizing our supreme court's recent adoption of the federal rule mandating the retroactive application of new rules for cases on direct review,[1] we adopt the federal retroactivity rule announced in *Teague v. Lane*, 489 U.S. 288, 310 (1989), which generally prohibits retroactive application of new rules for cases on collateral review. Accordingly, we conclude that *Powers* does not apply retroactively in a § 974.06, STATS., collateral review of a defendant's conviction, and we affirm the order denying Horton's postconviction motion.

On April 27, 1987, Horton was convicted of one count of second-degree intentional homicide and one count of endangering safety by conduct regardless of life. During jury selection, the prosecutor used a peremptory strike to remove the sole black venireperson. The prosecutor stated his reason for doing so was that the potential juror was an unmarried mother of two children and in his experience such people tended to be less responsible. Horton appealed his conviction on the grounds that his Sixth Amendment rights were violated by the prosecutor's strike of the lone black venireperson.

The court of appeals held that the State's use of its peremptory challenge to exclude a discrete segment of the community from a particular jury did not offend Horton's Sixth Amendment right to an indifferent jury or the right to a fair possibility for a jury constituting a representative cross-section of the community. *State v. Horton*, 151 Wis. 2d 250, 257-58, 445 N.W.2d 46, 50 (Ct.

---

[1] *See State v. Koch*, 175 Wis. 2d 684, 694, 499 N.W.2d 152, 158, *cert. denied*, 114 S. Ct. 221 (1993).

App. 1989), *cert. denied,* 493 U.S. 1083 (1990). Both the Wisconsin and United States Supreme Courts denied review.

In his initial appeal, Horton acknowledged that a Fourteenth Amendment challenge to the State's use of its peremptory strike would fail because under the applicable law at the time, *Batson v. Kentucky,* 476 U.S. 79, 96 (1986), a defendant could only challenge the strikes of jurors who were of the same race as the defendant. *Horton,* 151 Wis. 2d at 257, 445 N.W.2d at 50. However, in *Powers,* decided after Horton's conviction was final, the United States Supreme Court extended the *Batson* rule prohibiting purposeful racial discrimination in selection of the venire to peremptory challenges of members of the venire panel even though they are a different race than the defendant. *Powers,* 499 U.S. at 409-10.

Relying on *Powers,* Horton filed a § 974.06, STATS., postconviction motion for relief on the grounds that his Fourteenth Amendment rights were violated by the prosecutor's discriminatory conduct. The trial court denied the motion on the merits, concluding that the prosecutor's explanation for striking the venireperson was race neutral. *See Batson,* 476 U.S. at 97-98. Horton appeals.

It is undisputed that Horton's conviction became final upon the Supreme Court's denial of his petition for a writ of certiorari on February 20, 1990.[2] *Powers* was decided on April 1, 1991. Therefore, the State argues that Horton lacks standing to challenge the prosecutor's peremptory strike based on *Powers* in his

---

[2] A case is final when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith v. Kentucky,* 479 U.S. 314, 321 n.6 (1987).

postconviction motion. Because retroactivity of a newly-announced Supreme Court rule is properly treated as a threshold question, *Teague,* 489 U.S. at 300, we address this issue first.

We begin by briefly discussing the evolution of the United States Supreme Court's decisions regarding retroactivity because they have influenced the manner in which our supreme court has dealt with the issue. In *Linkletter v. Walker,* 381 U.S. 618, 629 (1965), the Supreme Court treated the question of retroactivity as purely a matter of policy to be decided on a case-by-case basis, stating that "the Constitution neither prohibits nor requires retrospective effect." In *Stovall v. Denno,* 388 U.S. 293, 297 (1967), the Court codified the *Linkletter* approach by establishing a three-pronged analysis to determine retroactivity based on the following criteria: (1) the purpose to be served by the new standards, (2) the extent of the reliance by law enforcement authorities on the old standards and (3) the effect on the administration of justice of a retroactive application of the new standards.

Subsequently, Justice Harlan and a shifting minority of Justices became increasingly dissatisfied with the inconsistent results and unfairness to individuals occasioned by the *Linkletter/Stovall* practice of applying a decision retroactively only to the particular litigant involved in the case. *See* LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 3-3, at 31 n.26 (2d ed. 1988). In *Mackey v. United States,* 401 U.S. 667, 675-94 (1971) (Harlan, J., concurring and dissenting), Justice Harlan suggested the adoption of a blanket rule whereby new constitutional rules of criminal procedure would always be applied retroactively to cases on direct review, but that with two limited exceptions they

should not be retroactively applied to cases on collateral review.

Finally, in *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), the Court formally abandoned the *Linkletter/Stovall* approach and declared that generally new rules for the conduct of criminal prosecutions should be applied retroactively to all pending or nonfinal cases, regardless of whether the new rule constituted a "clear break" from the past.[3] Shortly thereafter, a plurality of the Court in *Teague* held that upon federal habeas corpus review of state court convictions, new constitutional rules of criminal procedure will generally not be applicable to cases which have become final before the new rule is announced. *Teague*, 489 U.S. at 310. The Court stated that retroactive effect could be given on collateral review in two narrow exceptions: (1) if the new rule places certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe, *id.* at 307, or (2) if the new rule requires the observance of "those procedures that . . . are implicit in the concept of ordered liberty," *id.* (quoted source omitted), or constitutes a "watershed rule[ ] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding, *id.* at 311-13. This new test adopted by a plurality in *Teague* was subsequently endorsed by a

---

[3] The Supreme Court initially announced this new approach on more limited grounds in *United States v. Johnson*, 457 U.S. 537, 553-54, 562 (1982), where it imposed a flat rule that any decision interpreting the Fourth Amendment that does not represent a "clear break" with the past must be applied to all defendants whose convictions were pending on direct review or not final when the decision was announced. *See* LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 3-3, at 31 n.26 (2d ed. 1988).

majority of the Supreme Court. *See, e.g., Graham v. Collins,* 506 U.S. —, 113 S. Ct. 892 (1993).

It is clear that when considering the issue of retroactivity, the Wisconsin Supreme Court has been influenced by then-existing federal retroactivity analysis. For example, in *State ex rel. Johnson v. Cady,* 50 Wis. 2d 540, 555-56, 185 N.W.2d 306, 314 (1971), our supreme court adopted the three-factor *Stovall* test to determine whether to give a procedural requirement retroactive application. The court has repeatedly used the three-factor test since *Johnson.*[4]

However, in *State v. Koch,* 175 Wis. 2d 684, 694, 499 N.W.2d 152, 158, *cert. denied,* 114 S. Ct. 221 (1993), the supreme court followed the change in the federal retroactivity analysis when it formally replaced the three-factor test and adopted the *Griffith* rule, which retroactively applies new rules for the conduct of criminal prosecutions in all cases pending on direct review or not yet final. In doing so, however, the court made no comment on whether it approved of the *Teague* retroactivity analysis for cases on collateral review, such as the one at issue here.

Held strictly to its terms, *Teague* is applicable only in federal habeas corpus proceedings. Whether the retroactivity principles set forth in *Teague* and its progeny apply to a collateral review of a defendant's conviction pursuant to § 974.06, STATS., is a question of law as yet undecided by our supreme court.[5] We review such legal

---

[4] *See, e.g., State v. Bangert,* 131 Wis. 2d 246, 276, 389 N.W.2d 12, 27 (1986); *State v. Wisumierski,* 106 Wis. 2d 722, 729, 317 N.W.2d 484, 487-88 (1982); *Fitzgerald v. State,* 81 Wis. 2d 170, 174, 259 N.W.2d 743, 744 (1977).

[5] We note here that because we are primarily an error-correcting court and not responsible for establishing the judicial

questions de novo. *See Winiarski v. Miicke*, 186 Wis. 2d 409, 412, 521 N.W.2d 162, 164 (Ct. App. 1994).

Upon consideration of prior Wisconsin Supreme Court rulings regarding retroactivity, we see no reason why the principles of *Teague* should not be adopted and applied to postconviction proceedings pursuant to § 974.06, STATS. As explained above, our supreme court has in the past been influenced by and has followed then-existing federal retroactivity standards. Given the court's willingness in *Koch* to abandon the three-factor *Stovall* test in favor of the blanket rule established by *Griffith*, it is only logical that our supreme court would approve of a similar change with regard to cases on collateral review. Accordingly, we conclude that the reevaluation by the United States Supreme Court in *Teague* and our supreme court's past deference in this area suggest that an analogous revision is appropriate for Wisconsin.

In addition, we are persuaded by the reasoning of the increasing number of state courts which have

policy of this state, we initially certified this case to our supreme court, *see* RULE 809.61, STATS. The supreme court declined to accept jurisdiction.

We also note that in *State v. Denny*, 163 Wis. 2d 352, 357, 471 N.W.2d 606, 608 (Ct. App. 1991), prior to the Wisconsin Supreme Court's decision in *Koch*, we relied on the *Teague* retroactivity rule for cases on collateral review. A petition for review was denied by the supreme court. In *Denny*, we held that *Cruz v. New York*, 481 U.S. 186 (1987), retroactively applied in the defendant's postconviction motion based on the second exception set forth in *Teague*. *Denny*, 163 Wis. 2d at 357, 471 N.W.2d at 608. However, we did not offer any rationale for adopting *Teague*. Although we are obviously bound by our past decisions and therefore have already implicitly adopted *Teague*, we now take the opportunity to more fully develop our reasons for doing so.

adopted the *Teague* retroactivity analysis for new federal constitutional rules of criminal procedure in state collateral review proceedings.[6] First, the postconviction proceeding set forth in § 974.06, STATS., is similar to a habeas corpus proceeding in that they are both collateral attacks that are not meant to be a substitute for direct review: their primary goal is to ensure that defendants are not denied constitutional protections. *See State v. Flowers*, 561 N.E.2d 674, 682 (Ill. 1990) (comparing Illinois postconviction procedure with federal habeas corpus proceeding in *Teague*).

Second, like all state courts, Wisconsin has an interest in the finality of its criminal trials, so long as each defendant is accorded a trial consistent with constitutional principles. *See id.* As the *Teague* Court noted:

> Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect.

*Teague*, 489 U.S. at 309. The "new rule" principle enunciated in *Teague* "validates reasonable, good-faith

---

[6] *See State v. Slemmer*, 823 P.2d 41, 49 (Ariz. 1991); *People v. Flowers*, 561 N.E.2d 674, 682 (Ill. 1990); *Daniels v. State*, 561 N.E.2d 487, 489-90 (Ind. 1990); *Morgan v. State*, 469 N.W.2d 419, 422 (Iowa), *cert. denied*, 502 U.S. 913 (1991); *Taylor v. Whitley*, 606 So. 2d 1292, 1297 (La. 1992), *cert. denied*, 113 S. Ct. 2935 (1993); *Commonwealth v. Bray*, 553 N.E.2d 538, 541 (Mass. 1990); *State v. Reeves*, 453 N.W.2d 359, 382-83 (Neb.), *vacated on other grounds*, 498 U.S. 964 (1990); *State v. Zuniga*, 444 S.E.2d 443, 446 (N.C. 1994); *Pailin v. Vose*, 603 A.2d 738, 742 (R.I. 1992).

interpretations of existing precedents made by state courts, and thus effectuates the States' interest in the finality of criminal convictions." *Gilmore v. Taylor*, 508 U.S. —, —, 113 S. Ct. 2112, 2113 (1993) (quoted source and citation omitted). We believe the consideration of finality in criminal proceedings is equally applicable in Wisconsin and federal proceedings.

Third, public policy dictates that we apply the federal retroactivity analysis for issues of state law. We agree with the Arizona Supreme Court's public policy rationale for adopting the *Teague* analysis:

> The law regarding retroactivity is complex enough without requiring counsel and trial judges to apply different retroactivity rules, depending on whether the substantive decision is grounded on state or federal constitutional principles—especially when many decisions are grounded on both.

*State v. Slemmer*, 823 P.2d 41, 49 (Ariz. 1991).

Therefore, based upon consideration of prior cases decided by our supreme court that have adopted then-existing federal analysis and case law from other states adopting the present federal analysis, we adopt the federal retroactivity rules set forth in *Teague* for all cases on collateral review in our state courts under § 974.06, STATS.

Having set forth the relevant retroactivity standard, we must next determine whether the United States Supreme Court decision in *Powers* set forth a "new rule" such that it is not susceptible to retroactive application. A holding constitutes a "new rule" within the meaning of *Teague* if it " 'breaks new ground' " or " 'imposes a new obligation on the States or the Federal

290

Government.' " *Graham*, 506 U.S. at —, 113 S. Ct. at 897 (quoting *Teague,* 489 U.S. at 301). Similarly, "a case announces a new rule if its outcome was susceptible to debate among reasonable minds, or if a contrary result would not have been an illogical or even a grudging application of prior precedent." *Holland v. McGinnis*, 963 F.2d 1044, 1053 (7th Cir. 1992), *cert. denied*, 113 S. Ct. 1053 (1993) (quoted source omitted). In contrast, a case extends an old rule only if its holding is "compelled or dictated by existing precedent." *Id.* (quoted source omitted).

The issue of whether *Powers* announced a "new rule" has been considered and resolved by at least three federal courts of appeals, all of which have held that it is not subject to retroactive application absent the existence of one of the recognized exceptions in *Teague*.[7] We agree with the reasoning and conclusion of these decisions. For example, the Seventh Circuit Court of Appeals concluded that *Powers* announced a new rule of criminal procedure and was not compelled by *Batson* because:

> [P]rior to *Powers*, a number of appellate courts held that *Batson* did not permit a defendant to challenge the state's discriminatory use of peremptory challenges against venirepersons of a different race. . . . [T]hese cases, which we find to be "reasonable, good-faith interpretations of" *Batson* rather than rogue elephants, strongly indicate that the outcome in *Powers* was "susceptible to debate among reasonable minds," and hence not compelled by *Batson.*

---

[7] *See, e.g., Echlin v. LeCureux*, 995 F.2d 1344, 1350-51 (6th Cir.), *cert. denied*, 114 S. Ct. 552 (1993), *and cert. denied*, 114 S. Ct. 711 (1994); *Farrell v. Davis*, 3 F.3d 370, 372 (11th Cir. 1993); *Holland v. McGinnis*, 963 F.2d 1044, 1052-57 (7th Cir. 1992), *cert. denied*, 113 S. Ct. 1053 (1993).

. . . .
. . . In sum, *Batson* . . . had a latent ambiguity; it
did not specifically permit cross-racial attacks on
the state's peremptory challenges, and thus con-
ceivably was limited to circumstances where the
defendant and the excluded juror shared the same
race.

*Holland*, 963 F.2d at 1054-55 (quoted source and cita-
tions omitted). Further, we agree with the State's
argument and the federal circuits that neither of the
two *Teague* exceptions apply to the *Powers* rule.

On appeal, Horton argues that the issue of retroac-
tivity is irrelevant because the final judgment in
question applied only to his Sixth Amendment claims,
while this § 974.06, STATS., appeal is limited to Four-
teenth Amendment claims not previously adjudicated
during his direct appeal. Therefore, he contends that
he is bringing a *new action* based on the principle
announced in *Powers*, not applying *Powers*
retroactively.

First, we cannot agree with Horton's characteriza-
tion of his appeal as a "new action." Section 974.06(2),
STATS., clearly states that "[a] motion for [postconvic-
tion] relief is a part of the original criminal action,
[and] is not a separate proceeding."

Second, Horton's argument that he may rely on
*Powers* because his Fourteenth Amendment claims
were not adjudicated on direct appeal is not persuasive.
The Seventh Circuit in *Holland* addressed and rejected
a similar argument. In *Holland v. Illinois*, 493 U.S. 474
(1990), defendant Holland sought review in the United
States Supreme Court of the Illinois Supreme Court's
ruling that the Sixth Amendment does not permit a
defendant to attack the state's discriminatory use of
peremptory challenges against jurors of a different

race. *Holland,* 963 F.2d at 1055. However, Holland expressly disavowed the argument that defendants can bring cross-racial *Batson* claims under the Fourteenth Amendment. *Id.* The court noted that Holland's strategy, while reasonable in light of *Batson,* turned out to be a huge tactical mistake because five Supreme Court Justices signalled that he may have prevailed had he raised a Fourteenth Amendment argument. *Holland,* 963 F.2d at 1055.

Given Holland's Sixth Amendment strategy, the court suggested that he could only get relief if the Supreme Court had actually settled the cross-racial *Batson* issue. *Holland,* 963 F.2d at 1055. The court ultimately held that the Supreme Court did not settle anything under the Fourteenth Amendment, and therefore *Powers* constituted a new rule. *Holland,* 963 F.2d at 1056-57. In sum, the fact that Holland did not assert an equal protection argument in his direct appeal was irrelevant to the retroactive effect of *Powers.*

Likewise, Horton chose to rely on the Sixth Amendment instead of arguing that he could bring a cross-racial *Batson* claim under the Fourteenth Amendment. The mere fact that he did not argue his claim under the Fourteenth Amendment on his direct appeal does not afford him cover from the *Teague* rule prohibiting retroactive application of new rules in collateral proceedings. We agree with Horton's assertion that an appellant may bring a § 974.06, STATS., action based on constitutional grounds at any time after his or her conviction. However, the constitutional ground cannot be one that is a new rule as set forth in *Teague.*

In sum, we conclude Horton's postconviction challenge to the prosecutor's peremptory strike fails

because *Powers* announced a new rule which cannot be applied retroactively according to *Teague*. Therefore, we affirm the trial court's denial of Horton's § 974.06, STATS., motion for relief.

*By the Court.*—Order affirmed.