STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas A. DREXLER, Defendant-Appellant.†

Court of Appeals

*No. 02–1313–CR. Submitted on briefs May 8, 2003.—
Decided July 2, 2003.*

2003 WI App 169

(Also reported in 669 N.W.2d 182.)

† Petition to review denied 11-17-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ralph A. Kalal* of *Kalal & Associates*, Monona.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Douglass K. Jones*, assistant district attorney of Manitowoc.

On behalf of the plaintiff-respondents, the cause was submitted on the supplemental brief of *Jennifer E. Nashold*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J.[1]   Thomas A. Drexler appeals from a circuit court judgment convicting him of operating while intoxicated, fourth offense, contrary to Wis.

---

[1] We previously certified this case to the Wisconsin Supreme Court and it was rejected.

STAT. § 346.63(1)(a) (2001–02).[2] Drexler argues that the trial court, which adjudicated his second operating while intoxicated conviction, failed to advise him that he had the right to counsel appointed by the court and paid for by the county, even though he did not qualify for counsel provided by the state public defender. Drexler claims that this failure precluded a knowing, intelligent and voluntary waiver of his constitutional right to counsel. We disagree and hold that the trial court is only obligated to advise a defendant of the right to counsel; the trial court is not required to conduct a colloquy before accepting a waiver of counsel[3] that includes specific advice to a defendant that the right to appointed counsel is broader than the right to counsel provided by the state public defender and includes the right to counsel appointed by the court and paid for by the county. Therefore, we affirm.

¶ 2. Whether Drexler was deprived of his constitutional right to counsel is a question of constitutional fact that we review independently of the trial court. *See State v. Cummings*, 199 Wis. 2d 721, 748, 546 N.W.2d 406 (1996). Questions of "constitutional fact" are not actually "facts" in themselves, but are questions which require the "application of constitutional principles to the facts as found." *State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984), *aff'd, Woods v. Clusen*, 794 F.2d 293 (7th Cir. 1986) (citation omitted).

---

[2] All references to the Wisconsin Statutes are to the 2001–02 statutes unless otherwise noted.

[3] WISCONSIN JI—CRIMINAL SM-30 "Waiver and Forfeiture of Counsel; Self-Representation; Standby Counsel; 'Hybrid Representation'; Court Appointment of Counsel."

¶ 3. A criminal defendant in Wisconsin is guaranteed the right to counsel by both article I, section 7 of the Wisconsin Constitution and the Sixth Amendment to the United States Constitution. *Cummings*, 199 Wis. 2d at 747–48. The right to counsel is necessary to ensure that a criminal defendant receives a fair trial, that all defendants stand equal before the law and, ultimately, that justice is served. *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963).

¶ 4. When a defendant elects to proceed without counsel, the trial court must insure that the defendant: (1) has knowingly, intelligently and voluntarily waived the right to counsel, and (2) is competent to proceed without counsel. *State v. Klessig*, 211 Wis. 2d 194, 203, 564 N.W.2d 716 (1997). To establish the first prong, the trial court must conduct a colloquy designed to ensure that the defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the challenges and disadvantages of self-representation, (3) was aware of the seriousness of the charges, and (4) was aware of the general range of penalties that could be imposed. *Id.* at 206.

¶ 5. If a court determines that the defendant knowingly, intelligently and voluntarily waived the right to the assistance of counsel, the court must next determine whether the defendant is competent to proceed without counsel. *Id.* at 214. Factors to consider in making this second determination include the defendant's education, literacy, fluency in English, and any physical or psychological disability that may significantly affect his or her ability to communicate. *Id.* at 212.

¶ 6.   After entering a no contest plea to a fourth offense drunk driving charge but before sentencing, Drexler filed a motion collaterally attacking a 1991 judgment finding him guilty of a second drunk driving offense. In the motion and supporting affidavits, Drexler maintained that his plea in 1991 was defective because the trial court failed to fully inform him "that he could have the court appoint counsel for him if he could not afford counsel, and the state or the county could be held responsible for paying the cost of appointed counsel."

¶ 7.   The trial court did not consider Drexler's collateral attack upon his 1991 conviction before sentencing; it did set a hearing on the motion following sentencing in order to provide counsel with the opportunity to file written argument addressing Drexler's contention.[4] Along with his brief, Drexler submitted an affidavit. In the affidavit, Drexler makes it appear that the trial court never advised him of his right to counsel.[5] After Drexler filed this affidavit, the State located

---

[4] Citing *State v. Bangert*, 131 Wis. 2d 246, 293, 389 N.W.2d 12 (1986), the State argues that because Drexler never challenged the legitimacy of his three prior convictions prior to pleading no contest to the fourth offense, the guilty plea waiver rule bars this appeal. We conclude that the guilty plea waiver rule should not be applied in this case because the issue was fully litigated in the trial court and the issue presented is one of statewide concern that is a current problem facing the circuit courts of this state.

[5] In his affidavit, prepared and filed before the transcript was located, Drexler claims that at the 1991 plea and sentencing hearing:

> I recall no time in which the judge mentioned that I still retained the right to an attorney at this stage in the proceedings. I assumed that the time to hire counsel had passed . . . . At no time do I recall

444

several partial transcripts that contradicted Drexler's affidavit; the most significant one is from Drexler's 1991 plea and sentencing hearing in which the following exchange took place:

> THE COURT:   Therefore, you're giving up the right at this time to be represented by an attorney. You have the right to have an attorney at the time you enter a plea, or change your plea, and to discuss it with an attorney before you take that step. Do you understand that?
>
> THE DEFENDANT:   Yes.
>
> THE COURT:   An attorney may be able to point out things that I can't point out to you. Maybe the State will be able to discuss the case in detail with you, something I can't do, and the attorney may be able to point out certain factors that might be to your benefit to know, might even serve as a defense to the charges. You understand that?
>
> THE DEFENDANT:   Yes, sir.
>
> . . . .
>
> THE COURT:   Okay. Then, recognizing that you are giving up all of the rights that we've talked about, including the right to have an attorney sitting there with you when you enter this plea . . . the Court is going to ask you what your plea is . . . .

¶ 8.   After reviewing the record, which included Drexler's affidavit and the newly located partial transcripts, the trial court denied Drexler's collateral attack, concluding that Drexler had been advised of his

---

waiving my right to attorney representation or being informed of the consequences of proceeding without counsel. Nor do I recall that the judge informed me that I had a right to have the government, whether it be the state or county, appoint counsel for me if I could not afford private counsel.

right to counsel and made an informed decision to proceed without the benefit of counsel. Drexler appeals.

■

¶ 9.   The issue presented by this appeal challenges the information a trial court must provide a defendant regarding his or her right to appointed counsel. This is a question of law which we review de novo. Drexler is collaterally attacking a prior conviction and, as such, he must limit his claim to an alleged violation of his right to counsel. *See State v. Hahn*, 2000 WI 118, ¶ 4, 238 Wis. 2d 889, 618 N.W.2d 528. Specifically, Drexler asserts that he could not make a "deliberate choice to proceed without counsel" because the trial court in 1991 did not advise him that if he failed to qualify for a public defender, the court could appoint counsel paid for by the county. *See Pickens v. State*, 96 Wis. 2d 549, 563–64, 292 N.W.2d 601 (1980) ("Unless the record reveals the defendant's deliberate choice . . . a knowing and voluntary waiver will not be found."), *overruled on other grounds by State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997).

■

¶ 10.   We must first address Drexler's sworn affidavit implying he was not properly advised of his right to counsel because, under Wisconsin law, a defendant's affidavit is sufficient to establish a prima facie case of being denied the right to counsel. *Cf. State v. Baker*, 169 Wis. 2d 49, 77–78, 485 N.W.2d 237 (1992) (when a defendant mounts a collateral attack on a prior conviction challenging a denial of the right to counsel and there are no transcripts available, a defendant's affidavit is sufficient to establish a prima facie case of being denied the right to counsel). Once Drexler made this prima facie case showing he was denied the right to

counsel, the burden was on the State to come forward with evidence countering Drexler's affidavit. *See id.*

¶ 11.   We hold that the State met this burden by producing the partial transcript from the 1991 hearing. The transcript contradicts Drexler's affidavit and successfully overcomes his prima facie case.[6] We agree with

---

[6] To this conclusion we add the following discussion in order to underscore a problem of statewide concern that should properly be addressed by the supreme court:

The interrelationship of the sentence scheme for drunk driving, Wis. Stat. § 346.65, and the Supreme Court Rules for Record Retention, SCR ch. 72 (2001–02), compounds the problem of permitting a defendant to establish a prima facie case of a constitutional deprivation simply by filing a self-serving affidavit. Under the drunk driving sentencing scheme to determine whether an offense is a second offense, any eligible offense within ten years of the date of the current offense is counted, § 346.65(2)(b); and, to determine if an offense is a third or subsequent offense, any eligible offense within the defendant's lifetime and date of the current offense is counted. Secs. 346.65(2)(c)-(e). The Supreme Court's Record Retention Rules provide a limited "shelf life" for court records that will be needed to counter collateral attacks of prior drunk driving convictions:    (1) court reporter's notes are destroyed after ten years, SCR 72.01(47); (2) traffic forfeiture case files and related documents are destroyed after five years, SCR 72.01(24), (24a) and (24m); and (3) misdemeanor case files and related documents are destroyed after twenty years, SCR 72.01(18), (19) and (20).

Because a collateral attack on a prior criminal conviction is limited to an alleged violation of a defendant's right to counsel, *State v. Hahn*, 2000 WI 118, ¶ 4, 238 Wis. 2d 889, 618 N.W.2d 528, the lack of a transcript for prior convictions more than ten years old will make it almost impossible for the State to overcome a defendant's prima facie case of a constitutional deprivation of counsel and establish a knowing, voluntary and

the trial court in its holding that Drexler was advised of his right to counsel and made an informed decision to proceed without the benefit of counsel.

¶ 12.    We now address Drexler's assertion that his 1991 conviction is nonetheless invalid under *State v. Dean*, 163 Wis. 2d 503, 471 N.W.2d 310 (Ct. App. 1991). Our decision in *Dean* was not issued until three months after Drexler pled guilty in the 1991 case. In light of this, we requested that the parties address the issue of

intelligent waiver of counsel. *See State v. Baker*, 169 Wis. 2d 49, 78, 485 N.W.2d 237 (1992). It is conceivable that when a defendant is charged with a third or subsequent offense, there will be no court records to support his or her conviction for the first offense—traffic forfeiture records are destroyed after five years—or the second and subsequent offenses—misdemeanor records are destroyed after twenty years. We conclude that because significant court records will be destroyed under the supreme court's rules governing record retention, the State is placed in an untenable position under *Baker* if a defendant collaterally attacking a prior conviction can meet his or her burden of proof by simply filing an affidavit recounting his or her version of what occurred five, ten, twenty or twenty-five years earlier.

Because the supreme court is the only court with the power to overrule, modify or withdraw language from a previous case, *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997), it is necessary for the supreme court to re-examine *Baker* in light of the practical difficulties—demonstrated by this case— that ensue when a defendant can meet his or her burden of establishing a prima facie case simply by filing an affidavit providing a self-serving rendition of events that transpired in court five, ten or even twenty years earlier. Moreover, only the supreme court has the rule-making authority necessary to reconcile SCR ch. 72, "Retention and Maintenance of Court Records," with the statutes governing the use of prior convictions to enhance the sentence for subsequent crimes. Wis. Const. art. VII, § 3; Wis. Stat. § 751.12.

retroactivity in supplemental briefs—specifically, we asked the parties to address the question of whether the rule announced in *Dean* applies to Drexler's collateral attack on his 1991 conviction.

¶ 13. Generally, a "newly-announced" rule does not apply retroactively to cases on collateral review, unless existing precedent mandated the "newly-announced" rule. *See State v. Horton*, 195 Wis. 2d 280, 290–91, 536 N.W.2d 155 (Ct. App. 1995). Having thoroughly reviewed the law and supplemental briefs on the matter, we have come to the conclusion that, in the case at bar, it is unnecessary to decide *Dean's* ultimate application. This court's research has not revealed any requirement that a trial court specifically advise a defendant that he or she is entitled to counsel appointed by the court and paid for by the county if he or she does not qualify for counsel provided by the public defender. In fact, all that is required is that courts advise the defendant that, if indigent, he or she has the right to appointed counsel. WIS. STAT. § 970.02(1)(b); WIS JI—CRIMINAL SM-25; WIS JI—CRIMINAL SM-30. Thus, for purposes of this discussion, we will assume, without deciding, that *Dean* applies retroactively.[7]

¶ 14. In *Dean*, the defendant was twice rejected representation by the public defender because he did not meet the indigence standards of that agency and on

---

[7] We are comfortable with assuming arguendo that *State v. Dean*, 163 Wis. 2d 503, 471 N.W.2d 310 (Ct. App. 1991), applies retroactively given that *Dean's* result was based upon fundamental principles of constitutional law laid down in the existing precedents of *Carpenter v. County of Dane*, 9 Wis. 249 (1859); *Sparkman v. State*, 27 Wis. 2d 92, 133 N.W.2d 776 (1965); and *State ex rel. Fitas v. Milwaukee County*, 65 Wis. 2d 130, 221 N.W.2d 902 (1974). *Dean*, 163 Wis. 2d at 512–13.

both occasions he sought court review. *Dean*, 163 Wis. 2d at 508. In denying Dean's postconviction motion, the trial court held that it was not required to independently review the public defender's determination that the working poor did not qualify for the appointment of indigent counsel. *Id.* at 509. In rejecting the trial court's reliance on the public defender's decisions, we held:

> The legislature cannot limit who is constitutionally entitled to an attorney. The creation of the public defender's office is not the exclusive means for assuring counsel to indigents and did not negate the inherent power of the court to appoint when the public defender declines to act. The trial court therefore is required to go beyond the public defender's determination that a defendant does not meet the legislative criteria and determine whether the "necessities of the case" and the demands of "public justice and sound policy" require appointing counsel.

*Id.* at 513 (citations omitted).

¶ 15. Drexler asserts that *Dean* establishes that a person is indigent if, in light of his or her income, assets and other relevant considerations, he or she cannot afford to hire an attorney, and if a person is indigent, he or she is entitled to an appointed attorney. Drexler then culls from *Dean* a requirement that the colloquy a court is required to conduct before accepting a waiver of counsel must include specific advice to a defendant that the right to appointed counsel is broader than the right to counsel provided by the state public defender and includes the right to counsel appointed by the court and paid for by the county. He then reaches the conclusion that a defendant cannot make a knowing, voluntary and intelligent waiver of the right to counsel unless he

450

or she has been told that the right to appointed counsel includes the right to counsel appointed by the trial court.

¶ 16. From this line of reasoning, Drexler contends that his 1991 conviction is invalid because of the trial court's failure to adequately inform him of his broad right to appointed counsel. The limited record establishes that while the trial court advised him of his right to counsel appointed by the public defender at an appearance on January 14, 1991, the court never informed him of the right to court-appointed counsel. It also establishes that at the February 22, 1991 plea and sentencing hearing, the court generally advised him of his right to counsel but never advised him that, if indigent, he was entitled to appointed counsel—either appointed by the court or the state public defender. We are not persuaded by Drexler's interpretation of *Dean*.

¶ 17. We hold that under current Wisconsin law, a trial court does not err if it does not advise the defendant of the variety of sources for appointed counsel and the variety of sources for reimbursement of counsel. A trial court is only obligated to advise a defendant of the right to counsel; it is not required to conduct a colloquy before accepting a waiver of counsel that includes specific advice to a defendant that the right to appointed counsel includes the right to counsel appointed by the court and paid for by the county.

¶ 18. Whether trial courts *should* be required to additionally advise a defendant that appointed counsel will be provided if the defendant cannot afford counsel, notwithstanding the defendant's failure to qualify for a public defender, implicates Wisconsin's long-standing judicial policy which establishes that an indigent be

451

provided counsel. *Dean*, 163 Wis. 2d at 512. The Wisconsin Supreme Court has stated that:

> This power and duty [is] based on common law and supported by arguments from the various provisions of sec. 7, art. I of the Wisconsin constitution providing an accused with the right to assistance of counsel and with other rights calculated as necessary to secure a fair trial; the justice and humane result arising from the exercise of such power; the interest of the public in the correct and fair administration of its criminal laws; and the practice of the courts from the first organization of the government.

*Sparkman v. State*, 27 Wis. 2d 92, 98–99, 133 N.W.2d 776 (1965). Only the Wisconsin Supreme Court can answer the ultimate question of whether, in the future, a defendant's right to counsel should include a requirement that trial courts provide a more detailed description of this right.[8] *State v. Bangert*, 131 Wis. 2d 246, 267, 389 N.W.2d 12 (1986).

*By the Court.*—Judgment affirmed.

---

[8] The issue of whether or not it is advisable to require trial courts, in the future, to provide a more detailed description of the right to counsel requires the consideration of the advisability of establishing uniform guidelines to create consistency in the appointment of counsel for indigent defendants. If it should be mandatory for trial judges to inform a defendant that the right to appointed counsel includes either the right to counsel appointed by the public defender or by the court and paid for by the county is a question that comes within the supreme court's superintending and administrative authority over the courts. *See State v. Bangert*, 131 Wis. 2d 246, 267, 389 N.W.2d 12 (1986).