PER CURIAM.
¶1 David Liederbach appeals a judgment convicting him of possession of body armor by a person convicted of a violent felony and possession of a firearm by a felon. Liederbach challenges the circuit court's denial of his motion to suppress evidence seized pursuant to his arrest, arguing that the arrest was constitutionally invalid. We conclude the arrest was valid and affirm the conviction.
BACKGROUND
¶2 There were several discrepancies in the testimony at the suppression hearing, not all of which were resolved with explicit factual findings by the circuit court.[1] Because none of these discrepancies would alter our decision in this case, we will accept the version of any such unresolved disputed facts to be those advanced by Liederbach.
¶3 On May 28, 2015, City of Milwaukee police officer Patrick Coe was on patrol with his partner, officer John Caya, when Caya observed a man whom he knew to be the subject of an arrest warrant exit the driver's side door of a vehicle at a gas station. The officers approached the vehicle and arrested the driver. They then made contact with Liederbach, who was sitting in the vehicle's front passenger seat, to advise him that the driver was under arrest.
¶4 Upon speaking with Liederbach through the open windows of the vehicle, the officers could see that Liederbach appeared to be wearing body armor under his clothing. Caya asked Liederbach whether he was wearing body armor, and Liederbach affirmed that he was. When Caya then asked Liederbach if he had a gun, "he kind of just began to stare and ignore [the officers]." Coe described Liederbach's demeanor while the officers were talking to him as "passively resisting, not answering questions, not really talking to us, not saying anything, not wanting to cooperate." After obtaining Liederbach's identification, one of the officers asked Liederbach to exit the vehicle.
¶5 Once Liederbach was standing outside the vehicle, Coe more clearly observed the body armor and also saw that Liederbach had a large knife with a blade approximately seven inches long in a sheath on his hip. Coe testified that he could not see the knife while Liederbach was seated in the vehicle, but that the knife was plainly visible once Liederbach exited the vehicle. Caya then asked whether Liederbach was a felon, and Liederbach stated that he was. At that point, the officers arrested Liederbach for wearing the body armor and possessing the knife, and they placed him in the squad car.[2]
¶6 Coe did not personally run a record check on Liederbach before the arrest to determine whether Liederbach's prior conviction was for a violent felony. Coe testified that someone else ran a check, and he was not certain whether the record check was done prior to Liederbach being placed in the squad car.
¶7 While Liederbach was in the squad car, the police conducted a search of the vehicle and discovered a firearm in the glove box on the front passenger's side, near where Liederbach had been sitting. Coe testified that it was standard procedure for the City of Milwaukee Police Department to search a vehicle for valuables or contraband before towing it, and that it was necessary to tow the vehicle because the driver and Liederbach had both been arrested and the car was parked at a gas pump.
¶8 Liederbach moved to suppress the gun and body armor as evidence on the grounds they were seized in conjunction with an illegal arrest. The State challenged the claim that the arrest was illegal, and it further argued that Liederbach lacked any expectation of privacy in the glove box of the car and that the car would have been searched regardless of Liederbach's arrest due to the need to subsequently tow the vehicle. The circuit court determined that the police had reasonable suspicion to detain Liederbach, but it declined to explicitly decide whether there was probable cause for arrest at the time Liederbach was placed in the squad car. Instead, the court denied the suppression motion on the grounds that "since nobody had the car, [the police had] the right as the caretaker to search the car." Liederbach subsequently entered guilty pleas to the two charges related to his possession of the gun and wearing body armor. Liederbach now appeals the suppression ruling and his convictions.
DISCUSSION
¶9 On appeal, Liederbach renews his contention that his arrest was illegal because, at the time he was placed in the squad car, the police lacked the requisite probable cause to believe that he had committed a crime.[3] More specifically, Liederbach argues: (1) there was no probable cause to believe that his possession of body armor was illegal because the police did not yet know that his prior felony conviction was for a violent offense; and (2) there was no probable cause to believe that Liederbach's possession of a knife was illegal because the knife was not concealed and did not satisfy the criteria for being a dangerous weapon. On that basis alone, Liederbach argues that evidence regarding the body armor and gun should have been suppressed. Liederbach's brief-in-chief does not address the circuit court's determination that the search of the vehicle was independently warranted as an inventory search under the caretaker doctrine.
¶10 Items seized during a period of illegal detention are inadmissible. Florida v. Royer , 460 U.S. 491, 501 (1983). When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2015-16);[4] State v. Hindsley , 2000 WI App 130, ¶2, 237 Wis. 2d 358, 614 N.W.2d 48. However, we will independently determine whether the facts found by the circuit court satisfy applicable constitutional provisions. Id. , ¶22.
¶11 Probable cause for arrest exists when "the totality of the circumstances within the arresting officer's knowledge would lead a reasonable police officer to believe that the defendant probably committed a crime." State v. Kutz , 2003 WI App 205, ¶11, 267 Wis. 2d 531, 671 N.W.2d 660. The standard requires "more than a possibility or suspicion that [the] defendant committed an offense, but the evidence need not reach the level ... that guilt is more likely than not." State v. Mitchell , 167 Wis. 2d 672, 681-82, 482 N.W.2d 364 (1992). When competing reasonable inferences could be drawn, the officer is entitled to rely on the one justifying arrest. Kutz , 267 Wis. 2d 531, ¶12.
¶12 The probable cause standard does not require the police to have knowledge of every fact that would be necessary to obtain a conviction. Here, we are satisfied that the police had sufficient information to conclude that Liederbach had probably committed two distinct offenses.
¶13 First, knowing that Liederbach was a felon was sufficient to raise more than a possibility that his possession of body armor was illegal under WIS. STAT. § 941.291. That statute provides that no person may possess body armor if the person has been convicted of a violent felony and not pardoned. Id. It was not necessary for the police to know precisely what felony Liederbach had committed, or to confirm that it was a "violent" felony within the meaning of the body armor statute before taking him into custody. The prior felony could have been either a violent or non-violent one. Between those two reasonable inferences, the police were entitled to draw the reasonable inference that it could have been a violent felony-particularly given the facts that Liederbach was wearing body armor while carrying a long knife and that he was in the company of another individual who had just been arrested on an outstanding warrant.
¶14 Second, Liederbach's possession of a sheathed knife in a car was sufficient to raise more than a possibility that he was guilty of carrying "a concealed and dangerous weapon" as prohibited by WIS. STAT. § 941.23(2) (2013-14). A weapon being transported in a vehicle is considered concealed when it is easily accessible to an occupant of the vehicle but is "indiscernible from ordinary observation to a person outside the vehicle." State v. Walls , 190 Wis. 2d 65, 71, 526 N.W.2d 765 (Ct. App. 1994). Under the version of the statutes in effect at the time of Liederbach's arrest, a dangerous weapon was defined to include "any device designed as a weapon and capable of producing death or great bodily harm," or "any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." WIS. STAT. § 939.22(10) (2013-14).[5]
¶15 The knife in Liederbach's sheath could be considered concealed while Liederbach was in the vehicle because it was accessible to him but not discernible by ordinary observation to the officers speaking to Liederbach through the windows of the vehicle. The facts that the knife had a seven-inch blade and was being carried in a hip sheath supported the inference that it was designed as a weapon and capable of producing death or great bodily harm. See State v. Horton , 151 Wis. 2d 250, 260-61, 445 N.W.2d 46 (Ct. App. 1989) (a long-bladed knife carried in a sheath constituted a dangerous weapon). Based upon those reasonable inferences, the police had probable cause to believe that Liederbach was violating the concealed weapon statute.
¶16 Given our determination that the police had probable cause to believe that Liederbach's possession of the body armor and knife was illegal, we conclude that the search of the vehicle in this case did not take place during a period of an illegal arrest as Liederbach asserts. It follows that Liederbach's motion to suppress the seizure of the gun and body armor based on an alleged lack of probable cause for his arrest must fail.
¶17 Quite apart from the legality of the arrest, the question remains as to whether the search of the vehicle was constitutionally justified without a warrant. The State asserts several potential bases for the search, including the caretaker doctrine adopted by the circuit court, and probable cause to believe that there may have been contraband in the vehicle. Although Liederbach did not address the question of a warrantless search until his reply brief, we will discuss it here in the interest of completeness.
¶18 It is well established that a person's expectation of privacy in an automobile is considerably less than his or her expectation of privacy in a home.[6] State v. Weber, 163 Wis. 2d 116, 138, 471 N.W. 2d 187 (1991). Still, a warrantless search of a vehicle is per se unreasonable unless it falls within a clearly delineated exception to the warrant requirement. State v. Artic, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430. One such exception exists where "police have probable cause to believe that a vehicle contains evidence of a crime." State v. Lefler, 2013 WI App 22, ¶7, 346 Wis. 2d 220, 827 N.W.2d 650. An officer may reasonably search for contraband or evidence of criminal activity in an automobile located in a public place based on probable cause, without obtaining a warrant. State v. Tompkins, 144 Wis. 2d 116, 137-38, 423 N.W.2d 823 (1988). "[P]robable cause eschews technicality and legalisms in favor of a 'flexible, common-sense measure of the plausibility of particular conclusions about human behavior.' " State v. Secrist, 224 Wis. 2d 201, 215, 589 N.W.2d 387 (1999) (citation omitted). The test is an objective test that requires an examination of the totality of the circumstances known to the police. State v. Weber , 2016 WI 96, ¶20, 372 Wis. 2d. 202, 887 N.W.2d 554.
¶19 Here, we determine that, given the totality of the circumstances, the police had the requisite probable cause allowing them to search for evidence of criminal activity in the automobile, without obtaining a warrant. Those circumstances included Liederbach's admission that, while the vehicle was located in a public gas station, he was wearing body armor, he was a felon, and he possessed a concealed long knife. In addition, the police had just arrested Liederbach's co-occupant of the vehicle on an outstanding warrant. Those facts are coupled with the fact that, when Liederbach was asked if he had a gun, he "kind of just began to stare and ignore [the officers]" and was "passively resisting, not answering questions, not really talking to [the officers], not saying anything, not wanting to cooperate."
¶20 Liederbach argues that, although he may have declined to answer the officers' question about a gun, he had the right to do so. That may be true in a vacuum, but the issue here is not his right to refuse to answer, but whether the officers had probable cause to believe the vehicle contained evidence of a crime. Liederbach's suspicious demeanor and evasiveness, when asked if he had a gun, came right after he readily admitted he was a felon wearing body armor, and adds to the totality of the circumstances. In all, the officers were acting reasonably when they searched the vehicle's glove box and seized the gun. On these facts, we conclude the circuit court properly denied Liederbach's motion to suppress the gun evidence.[7]
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

For instance, officer Patrick Coe first testified that his partner, officer John Caya, (who did not testify) had asked Liederbach about his felony status while Liederbach was still in the car. However, on cross-examination, Coe acknowledged that Caya's police report stated that Caya asked Liederbach about his felony status after Liederbach had exited the car, and Coe agreed that the report was accurate.

There is no dispute between the parties that the moment of arrest was when Liederbach was placed in the squad car, and the circuit court agreed with that conclusion.

Liederbach does not dispute that the police had reasonable suspicion to ask him to exit the vehicle and to detain him while investigating whether his possession of the body armor or the knife was illegal.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The concealed weapon statute has subsequently been amended to exclude knives as dangerous weapons, "[n]otwithstanding s. 939.22(10)." See Wis. Stat. § 941.23(1)(ap) ; see also 2015 Wis. Act 149, § 8. This amendment supports our conclusion that, absent the exclusion, a knife fell within the definition of a dangerous weapon that was in effect during the time period at issue here.

Liederbach also fails to explain why he had an expectation of privacy in the glove box of a vehicle that was not his.

Because we conclude the police had probable cause to search the vehicle, we need not address alternative exceptions that may have justified a warrantless vehicle search, such as a protective search or an inventory search of the vehicle.