# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1058-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>   Plaintiff-Appellant,<br>  v.<br>Teresa L. Clark,<br>   Defendant-Respondent. |

ON BYPASS FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | April 20, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 15, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | Circuit |
|  COUNTY: | Ashland |
|  JUDGE: | John P. Anderson |

JUSTICES:

HAGEDORN, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK and REBECCA GRASSL BRADLEY, JJ., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which DALLET and KAROFSKY, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-appellant, there were briefs filed by *Michael C. Sanders,* assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Michael C. Sanders*.

For the defendant-respondent, there was a brief filed by *Garrett M. Gondik* and *Gondik Law, S.C.*, Superior. There was an oral argument by *Garrett M. Gondik*.

An amicus curiae brief was filed on behalf of Wisconsin State Public Defender by *Katie R. York*, appellate division director;

with whom on the brief was *Kelli S. Thompson,* state public defender.

**2022 WI 21**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP1058-CR
(L.C. No. 2018CF171)

STATE OF WISCONSIN         :      IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Appellant,**

**FILED**

  **v.**

**APR 20, 2022**

**Teresa L. Clark,**

Sheila T. Reiff
Clerk of Supreme Court

      **Defendant-Respondent.**

---

HAGEDORN, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK and REBECCA GRASSL BRADLEY, JJ., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which DALLET and KAROFSKY, JJ., joined.

---

APPEAL from an order of the Circuit Court for Ashland County. *Reversed and cause remanded.*

¶1    BRIAN HAGEDORN, J.    A defendant charged with operating while intoxicated (OWI) faces an escalating set of penalties depending on the number of prior convictions.  As part of a defense to an OWI charge, a defendant may challenge a prior conviction——known as a collateral attack——when the defendant was not represented and did not knowingly, intelligently, and voluntarily waive the right to counsel.  This court has created a procedure to

facilitate these challenges. First, by pointing to evidence in the record, a defendant must establish a prima facie case that the defendant did not knowingly, intelligently, and voluntarily waive the right to counsel. Once established, the burden shifts to the State to prove that the waiver was nonetheless valid.

¶2 The question presented here is whether this same burden-shifting procedure should apply when the relevant hearing transcript from the prior conviction is unavailable. We conclude it should not, and hold that in these circumstances, the defendant retains the burden to demonstrate the right to counsel was violated.

¶3 In this case, the circuit court granted Teresa Clark's motion collaterally attacking two prior convictions, despite the absence of the relevant transcript. The court explicitly based its ruling on the burden-shifting regime and the State's failure to meet its burden to rebut Clark's testimony. In light of our conclusion that the burden should not shift to the State when no transcript is available, we reverse the circuit court's order and remand to the circuit court to allow Clark an opportunity to satisfy her burden.

## I. BACKGROUND

¶4 In 2018, Clark was charged in Ashland County with fourth-offense counts for both OWI and prohibited alcohol concentration

(PAC).[1] Her driving record showed three prior OWI convictions: one in Chippewa County from 1994, and two in Eau Claire County from 1995 and 2002. Before the circuit court,[2] Clark collaterally attacked her two Eau Claire County convictions claiming she did not knowingly, intelligently, and voluntarily waive her right to counsel. To support her motion, Clark submitted an affidavit alleging that in both cases she was unrepresented and the Eau Claire County Circuit Court did not conduct a colloquy with her regarding the difficulties and dangers of proceeding pro se. The State acknowledged that Clark's sworn statement entitled her to an evidentiary hearing.

¶5 Clark's counsel submitted a separate affidavit, explaining that the relevant documents from both Eau Claire County convictions no longer existed. The file for the 1995 conviction was destroyed because 20 years passed since the conviction, and the transcript for the 2002 case could not be prepared because the reporter's notes were destroyed 10 years after the conviction. Both Clark and the State agree that destruction of these records was consistent with the applicable document retention rules. See SCR 72.01(18), (47).[3]

---

[1] Clark was also charged with OWI causing injury and PAC causing injury, both as second or subsequent offenses.

[2] The Honorable John P. Anderson of the Ashland County Circuit Court presided.

[3] SCR 72.01 provides:

¶6   Consequently, the State could not produce transcripts from either the 1995 or 2002 cases at the motion hearing. Instead, it submitted the only documents available:  a complaint, a bond sheet, a plea hearing minutes sheet, and a sentencing hearing minutes sheet——all from the 2002 case.  Both the plea hearing minutes sheet and the sentencing hearing minutes sheet had boxes checked indicating that Clark appeared "Without counsel" and "Def. advised of his right to attorney/constitutional rights."[4]  In her testimony, Clark acknowledged the information in those documents, but nevertheless maintained that the judges in those cases did not sufficiently advise her of her right to an attorney.

¶7   The circuit court was skeptical.  It stated that Clark's credibility was "somewhat lacking," and expressed its

---

> [T]he original paper records of any court shall be retained in the custody of the court for the following minimum time periods:
>
> . . .
>
> (18) Misdemeanor case files.  All papers deposited with the clerk of courts in every proceeding commenced under chapter 968 of the statutes for misdemeanor offenses, including criminal traffic offenses:  20 years after entry of final judgment.
>
> . . .
>
> (47) Court reporter notes.  Verbatim stenographic, shorthand, audio or video notes produced by a court reporter or any other verbatim record of in-court proceedings:  10 years after the hearing.

[4] Clark contended that the use of masculine pronouns on both hearing minutes sheets rendered their reliability suspect because Clark is a woman.

"suspicion . . . that the chances of what the defense is asking me to believe [are] not terribly great." Still, the circuit court determined it had no choice but to grant Clark's motion collaterally attacking the two convictions. The circuit court concluded Clark's testimony shifted the burden to the State, which submitted insufficient evidence to refute Clark's testimony. Clark's successful collateral attacks effectively reduced her OWI and PAC charges from fourth-offenses to first-offenses.[5]

¶8 The State sought and received leave to file an interlocutory appeal. It then filed a petition for bypass, which we granted.

## II. DISCUSSION

¶9 In Wisconsin, the penalty for an OWI or PAC offense depends on the defendant's number of prior OWI/PAC convictions.[6] For a defendant's first offense, the penalty is a civil forfeiture. Wis. Stat. § 346.65(2)(am)1. Second and third offenses are

---

[5] Clark collaterally attacked only two of her three prior OWI convictions. However, the State may charge second-offense OWI only if the first and second offenses occurred within a ten-year span. Wis. Stat. § 346.65(2)(am)2. (2019-20). So, although Clark's 1994 conviction could count toward a fourth-offense OWI charge, it cannot count toward a second-offense charge. Compare § 346.65(2)(am)4. with § 346.65(2)(am)2.

All subsequent references to the Wisconsin Statutes are to the 2019-20 version.

[6] Wisconsin's OWI and PAC crimes are defined at Wis. Stat. § 346.63(1)(a) & (b).

misdemeanors. § 346.65(2)(am)2.-3. Fourth offenses and above are escalating classes of felonies. § 346.65(2)(am)4.-7.

¶10 The United States Supreme Court has held that when a crime uses prior convictions as a penalty enhancer in this manner, the defendant has a limited constitutional right to challenge the underlying convictions. Burgett v. Texas, 389 U.S. 109, 114-15 (1967); Lewis v. United States, 445 U.S. 55, 66-67 (1980). This constitutional right to "collaterally attack" prior convictions applies when the defendant alleges that the prior proceedings involved certain violations of the defendant's right to counsel.[7] Custis v. United States, 511 U.S. 485, 487, 496 (1994); see also State v. Hahn, 2000 WI 118, ¶28, 238 Wis. 2d 889, 618 N.W.2d 528. In the OWI and PAC context, this means that a defendant has a right to collaterally attack a prior conviction when the defendant was not represented and did not knowingly, intelligently, and voluntarily waive the right to counsel. State v. Ernst, 2005 WI 107, ¶25, 283 Wis. 2d 300, 699 N.W.2d 92.

¶11 At times, we have employed our superintending authority in an effort to ensure a defendant's right to counsel is protected. Most notably, in State v. Klessig, we mandated the use of a colloquy before a defendant may proceed pro se. 211 Wis. 2d 194,

---

[7] The right to counsel is protected by both the United States and Wisconsin constitutions. The Sixth Amendment of the United States Constitution provides in part: "In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." And Article I, Section 7 of the Wisconsin Constitution provides in part: "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . . ."

206, 564 N.W.2d 716 (1997). Under Klessig, the circuit court must conduct a colloquy to ensure that the defendant understands the right to counsel and the drawbacks to proceeding pro se. Id. If challenged postconviction, the State is required to demonstrate by clear and convincing evidence that the defendant properly waived the right to counsel. Id. at 207. If the circuit court conducts the Klessig colloquy and the defendant expresses a continued desire to proceed pro se, that will ordinarily suffice. Id. Absent the colloquy, the State has the burden to show by clear and convincing evidence that the defendant properly waived the right to counsel. Id. The Klessig colloquy is not required by the constitution itself; it is "a court-made procedural rule" aimed at protecting the right to counsel. Ernst, 283 Wis. 2d 300, ¶18.

¶12 But what happens when a defendant alleges, after the conviction is final as a matter of law, that no Klessig colloquy occurred? Our cases discussing the burden of proof in the collateral attack context have expressly drawn on our plea withdrawal jurisprudence. Ernst, 283 Wis. 2d 300, ¶31 & n.11. So we turn there to provide necessary context for the rules we have adopted and the issue before us in this case.

¶13 When a defendant raises a postconviction challenge to a guilty or no contest plea, we have adopted a default procedure and an alternate procedure. See generally State v. Negrete, 2012 WI 92, ¶¶16-19, 343 Wis. 2d 1, 819 N.W.2d 749. The default procedure, articulated in State v. Bentley, places the burden on

7

the defendant to prove a plea's deficiency.[8] 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996). This makes sense. Once judgment is entered, the conviction is afforded a "presumption of regularity," and the defendant faces a heavy burden to overcome that presumption.[9] Parke v. Raley, 506 U.S. 20, 29 (1992). The Bentley procedure "embodies the general rule that a defendant seeking to withdraw a guilty or no contest plea after sentencing must prove manifest injustice by clear and convincing evidence." Negrete, 343 Wis. 2d 1, ¶29. It is therefore "the starting point from which we may determine whether any other pleading standards apply." Id.

¶14 The alternate procedure, articulated in State v. Bangert, applies when the defendant identifies a defect in the relevant proceeding's record.[10] 131 Wis. 2d 246, 274-75, 389 N.W.2d 12 (1986). Specifically, the Bangert procedure applies when "a defendant mak[es] 'a pointed showing' of an error in the plea colloquy by reference to the plea colloquy transcript."

---

[8] This procedure is often given the Bentley label, though it predates our decision in that case. See Nelson v. State, 54 Wis. 2d 489, 497-98, 195 N.W.2d 629 (1972); Levesque v. State, 63 Wis. 2d 412, 420-21, 217 N.W.2d 317 (1974).

[9] Assigning this burden to the defendant bringing the collateral attack is consistent with due process. In Parke v. Raley, the Court explained that "even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." 506 U.S. 20, 31 (1992).

[10] We created Bangert's burden-shifting procedure "[a]s a function of our superintending and administrative authority"; it is not required by our constitution or statutes. State v. Bangert, 131 Wis. 2d 246, 267, 389 N.W.2d 12 (1986).

8

_Negrete_, 343 Wis. 2d 1, ¶20 (quoting another source). Under that procedure, after the defendant identifies a deficiency, the burden shifts to the State to prove the conviction's sufficiency.[11] _Id._, ¶19. Unless the State shows "by clear and convincing evidence that the defendant's plea was made knowingly, intelligently, and voluntarily," the defendant's plea withdrawal motion will succeed. _Id._

¶15 In _Negrete_, we explained that _Bangert_'s procedure is not warranted when the circumstances justifying its application are not present:

> Where the transcript of the plea hearing is unavailable, however, _Bangert_'s burden shifting procedure does not apply, because: (1) the defendant will not be able to make the requisite showing from the transcript that the circuit court erred in the plea colloquy, and (2) the rationale underlying _Bangert_'s burden shifting rule does not support extending that rule to situations where a violation is not evident from the transcript. Instead, the policy of finality counsels that a party seeking to disrupt a final judgment by withdrawing his plea must first allege facts which, if true, demonstrate that manifest injustice has occurred and that relief is therefore warranted.

_Id._, ¶31. Thus, in the plea withdrawal context, "where a defendant is unable to point to a defect evident on the face of a plea colloquy transcript because such transcript is unavailable, the more appropriate review . . . is that set forth in _Bentley_." _Id._, ¶33.

---

[11] The defendant also "must allege that he did not know or understand the information that should have been presented at the plea hearing." _State v. Negrete_, 2012 WI 92, ¶30, 343 Wis. 2d 1, 819 N.W.2d 749.

9

¶16 To summarize, under both the default procedure and the exception, the defendant seeking to withdraw a plea bears the initial burden to demonstrate a plea's invalidity. However, if the defendant points to a defect within the plea colloquy transcript, such as the absence of a proper colloquy, the defendant has stated a prima facie challenge to the plea and Bangert's burden-shifting procedure applies.

¶17 This summary in hand, we return to the burden of proof for a collateral attack on the grounds that the right to counsel was violated. In State v. Ernst, we held that a circuit court's failure to conduct a Klessig colloquy in a prior proceeding could serve as the basis for a collateral attack. 283 Wis. 2d 300, ¶¶22-25. In doing so, we expressly adopted the Bangert procedure for these collateral attack proceedings, concluding there was "no reason to apply a different procedure" in the collateral attack context than we would "on a direct attack against a prior conviction." Id., ¶31. Importantly, Ernst's collateral attack involved a conviction for which there was a transcript in the record. See id., ¶6. We did not discuss what our analysis would look like if no transcript of the prior proceeding was available. Nevertheless, courts interpreted Ernst to require application of the burden-shifting procedure in all collateral attack proceedings. See, e.g., State v. Bohlinger, 2013 WI App 39, ¶¶16, 20-21, 346 Wis. 2d 549, 828 N.W.2d 900.

¶18 We now clarify that the Bangert-type burden-shifting procedure should apply only where it is most appropriate——i.e., where there is a transcript. As we explained in Negrete, without

10

a transcript, the burden-shifting procedure is unworkable and its rationale inapplicable. 343 Wis. 2d 1, ¶¶31-32. Whether on direct appeal or collateral attack, the showing Bangert requires——a deficiency apparent on the face of a transcript——cannot be made without a transcript. See id., ¶32. Moreover, automatically shifting the burden to the State in the absence of a transcript would put the State "in an untenable position." See State v. Drexler, 2003 WI App 169, ¶11 n.6, 266 Wis. 2d 438, 669 N.W.2d 182. Notwithstanding the document retention rules we provided under SCR 72.01(18) and (47), it would require the State to retain criminal case records and transcripts indefinitely or risk being caught short-handed in a later OWI prosecution.[12] In Ernst, we said we could not see why "we should apply different procedures on a direct attack than we do on a collateral attack," since doing so "would make the State's burden in a collateral attack more difficult than in a direct attack." 283 Wis. 2d 300, ¶31 n.11. Because we would not apply Bangert's burden-shifting procedure without a transcript in the plea withdrawal context,

---

[12] In State v. Drexler, the court of appeals identified this problem, noting the "practical difficulties . . . that ensue when a defendant can meet his or her burden of establishing a prima facie case simply by filing an affidavit providing a self-serving rendition of events that transpired in court five, ten or even twenty years earlier." 2003 WI App 169, ¶11 n.6, 266 Wis. 2d 438, 669 N.W.2d 182.

11

consistency requires that we not apply it without a transcript in the context of a right to counsel collateral attack either.[13]

¶19 Clark responds that under State v. Baker, the burden should automatically shift to the State anytime a defendant makes a prima facie showing of a constitutional violation in a prior proceeding, even without a transcript. 169 Wis. 2d 49, 77, 485 N.W.2d 237 (1992). This area of law has developed since Baker was decided, however. And such a blanket rule conflicts with the reasoning of our subsequent cases. Baker predated the United States Supreme Court's direction that it is "appropriate to assign a proof burden to the defendant" in the collateral attack context.[14] Parke, 506 U.S. at 31. It came before we created Klessig's colloquy requirement. Klessig, 211 Wis. 2d at 206. And it preceded Ernst, where we held that an insufficient or absent Klessig colloquy is grounds for collateral attack, adopted the Bangert procedure for this kind of collateral attack, and explained that "the State's burden in a collateral attack" should not be

---

[13] We do not address whether the burden should remain on the defendant if the missing transcript was a result of governmental misconduct.

[14] In State v. Baker, we stated that on collateral attack, the presumption against waiver of counsel conflicts with the presumption of regularity that attaches to final convictions. 169 Wis. 2d 49, 76-77, 485 N.W.2d 237 (1992). Baker adopted a burden-shifting framework to "resolve this apparent conflict." Id. at 77. In Parke, however, the Supreme Court rejected Baker's balancing approach. 506 U.S. at 29-30. The Court expressly declined to "import" the presumption against waiver into collateral attack proceedings, holding instead that the "presumption of regularity that attaches to final judgments" controls. Id. at 29 (quotation marks omitted).

12

"more difficult than in a direct attack." 283 Wis. 2d 300, ¶¶22-25, ¶31 n.11. Finally, <u>Baker</u> came before our holding in <u>Negrete</u> that the <u>Bangert</u> procedure requires a transcript. <u>Negrete</u>, 343 Wis. 2d 1, ¶16-21. To the extent it is contended <u>Baker</u> stands for the broad rule Clark advances, that approach is erroneous. It is inconsistent with subsequent cases and cannot control.[15] <u>See</u> <u>Johnson Controls, Inc. v. Emps. Ins. of Wausau</u>, 2003 WI 108, ¶98, 264 Wis. 2d 60, 665 N.W.2d 257 (explaining that departing from precedent is warranted when "changes or developments in the law have undermined the rationale behind a decision" and when "the precedent has become detrimental to coherence and consistency in the law").

¶20 To recap, if a defendant collaterally attacking a prior OWI/PAC conviction cannot point to a defect in the relevant transcript, the burden-shifting procedure does not apply. Instead, the defendant must carry the burden to demonstrate that a violation occurred.

¶21 In the case before us, Clark claims that the Eau Claire County Circuit Court in 1995 and 2002 failed to conduct the <u>Klessig</u> colloquy for two of her prior convictions. But the transcript necessary to substantiate that claim does not exist. Under the standard we articulate here, the lack of a transcript means that Clark retains the burden to prove a violation of her right to counsel occurred. The circuit court shifted the burden to the

---

[15] The same is true for <u>Drexler</u>, 266 Wis. 2d 438, ¶¶10-11, to the extent it is inconsistent with this opinion.

State, however, so we reverse its order granting Clark's motion collaterally attacking her 1995 and 2002 convictions. We remand with instructions for the circuit court to afford Clark an opportunity to satisfy her burden.[16]

*By the Court.*——The order of the circuit court is reversed and the cause is remanded to the circuit court.

---

[16] In briefing, Clark requested a remand for a new evidentiary hearing in the event we reversed the circuit court's application of Bangert's burden-shifting procedure. The State did not object to Clark's request.

¶22 ANN WALSH BRADLEY, J. *(dissenting).* In State v. Baker, this court carefully balanced two presumptions: (1) the presumption of regularity that attaches to a judgment, and (2) the presumption against waiver of counsel. 169 Wis. 2d 49, 76, 485 N.W.2d 237 (1992). Weighing the concerns attendant to each of these presumptions and providing direction to future courts in a case such as this, the court fashioned a procedure on how to allocate the burden of proof. Namely, the Baker court adopted a burden-shifting structure.

¶23 Initially, the burden is on the defendant to make a prima facie showing and then it shifts to the State. "Because the defendant must overcome the presumption of regularity attached to the prior conviction, the defendant bears the initial burden of coming forward with evidence to make a prima facie showing of a constitutional deprivation in the prior proceeding." Id. at 77.

¶24 If such a showing is made, the burden then shifts to the State: "If the defendant makes a prima facie showing of a violation of the right to counsel, the state must overcome the presumption against waiver of counsel and prove that the defendant knowingly, voluntarily, and intelligently waived the right to counsel in the prior proceeding." Id.

¶25 Casting Baker aside, the majority leaves in its stead a hurdle that is nigh insurmountable for a defendant. The majority dismisses the presumption against waiver of counsel with a wave of the hand, tucking it away in a footnote, and failing to weigh it against the competing presumption of regularity.

1

¶26 The majority's error is twofold. First, it tries to put a square peg in a round hole, applying the law of plea withdrawal to a collateral attack without the careful balancing of interests the Baker court conducted, and that remains required. Second, the majority foists upon Clark and similarly situated defendants a nearly impossible burden where a transcript is unavailable through no fault of their own.

¶27 Accordingly, I respectfully dissent.

I

¶28 In 2018, Teresa Clark was charged with OWI and PAC, both as a fourth offense. Majority op., ¶4. She sought to collaterally attack two of her prior convictions, from 1995 and 2002, asserting that each of those convictions occurred without counsel and that she did not knowingly, intelligently, and voluntarily waive the right to counsel. Id.

¶29 To support her motion to collaterally attack these prior convictions, Clark submitted an affidavit. Id. In the affidavit, Clark averred that she was unrepresented in the two cases subject to her collateral attack, and that at no time did the judge perform a colloquy regarding the disadvantages of proceeding pro se, the seriousness of the charges, or the range of penalties to which she was subject. She further alleged that at no point did the judge perform a colloquy to ensure that she was making a deliberate choice to proceed without counsel.

¶30 However, the relevant files and transcripts for Clark's prior convictions no longer exist. Id., ¶5. The file for the 1995 conviction has been destroyed because 20 years have elapsed

2

since the conviction, and the court reporter's notes for the 2002 case have likewise been destroyed because 10 years have passed since that conviction. Id.

¶31 There is no allegation that the destruction of these records demonstrates anything untoward. Indeed, Clark and the State agree that the destruction of these records was consistent with supreme court rules regarding document retention. Id.; see SCR 72.01(18), (47).

¶32 In response to Clark's motion, the State submitted several documents from the 2002 case that had not been destroyed: a complaint, bond sheet, plea hearing minutes sheet, and sentencing hearing minutes sheet. Majority op., ¶6. The minutes sheets from both the plea hearing and sentencing hearing had boxes checked indicating that Clark appeared without counsel and had been "advised of his right to attorney/constitutional rights." Id.[1]

¶33 After an evidentiary hearing at which Clark testified, the circuit court granted Clark's motion to collaterally attack her prior convictions. It concluded that Clark's testimony that she did not knowingly, intelligently, and voluntarily waive her right to counsel shifted the burden to the State, and that the State submitted insufficient evidence to refute Clark's testimony. Id., ¶7.

¶34 The majority now reverses the circuit court, determining that the usual burden-shifting procedure does not apply when a

---

[1] As the majority observes, "Clark contended that the use of masculine pronouns on both hearing minutes sheets rendered their reliability suspect because Clark is a woman." Majority op., ¶6 n.4.

3

transcript of a prior conviction is unavailable. Id., ¶2. Instead, "in these circumstances, the defendant retains the burden to demonstrate the right to counsel was violated." Id.

¶35 In the majority's view, the usual "burden-shifting procedure should apply only where it is most appropriate——i.e., where there is a transcript." Id., ¶18. It posits that "without a transcript, the burden-shifting procedure is unworkable and its rationale inapplicable" and that "automatically shifting the burden to the State in the absence of a transcript would put the State 'in an untenable position.'" Id. (citing State v. Drexler, 2003 WI App 169, ¶11 n.6, 266 Wis. 2d 438, 669 N.W.2d 182).

II

¶36 The majority's first error is in applying the law of plea withdrawal to a collateral attack while neglecting the careful balancing of interests that is necessary to resolve this case, and which the Baker court conducted. From 1992 until today, Baker established the burdens on various parties in the case of a collateral attack. 169 Wis. 2d at 77. Baker, like this case, involved a missing transcript——the court there noted that the transcript had been "lost." Id. at 58.

¶37 At the outset of its analysis, the Baker court observed that there are two competing presumptions at work when a defendant collaterally attacks a prior conviction on the basis of a violation of the right to counsel: the presumption of regularity of a

4

judgment[2] and the presumption against waiver of counsel.[3]  Id. at 76.

¶38  To resolve this "apparent conflict of presumptions," the court adopted the following allocation of the burdens of production and persuasion.  "Because the defendant must overcome the presumption of regularity attached to the prior conviction, the defendant bears the initial burden of coming forward with evidence to make a prima facie showing of a constitutional deprivation in the prior proceeding."  Id. at 77.  In the event the defendant makes such a showing, the burden shifts to the State:  "If the defendant makes a prima facie showing of a violation of the right to counsel, the state must overcome the presumption against waiver of counsel and prove that the defendant knowingly, voluntarily, and intelligently waived the right to counsel in the prior proceeding."  Id.

¶39 Paying little mind to the presumption against the waiver of counsel, the majority jettisons this careful balancing, and instead erroneously applies the law of plea withdrawal to collateral attacks based on a violation of the right to counsel.

---

[2] "[U]pon collateral attack a judgment carries with it a presumption of regularity."  State v. Baker, 169 Wis. 2d 49, 76, 485 N.W.2d 237 (1992); see also Parke v. Raley, 506 U.S. 20, 29 (1992) (indicating that such a presumption, which attaches to final judgments, is "deeply rooted in our jurisprudence").

[3] Courts are to "indulge in every reasonable presumption against waiver of counsel."  Baker, 169 Wis. 2d at 76 (citing Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938)).  Waiver may not be presumed from a silent record, but rather "the record must disclose unequivocal, express waiver."  Spencer v. State, 85 Wis. 2d 565, 571, 271 N.W.2d 25 (1978).

5

In doing so, it declares that <u>Baker</u> "cannot control." Majority op., ¶19.

¶40 The majority mistakenly discounts the important presumption against waiver of counsel. Yet, it is the presumption against waiver of counsel that distinguishes a collateral attack based on a violation of the right to counsel from a run-of-the-mill plea withdrawal.

¶41 In this case and for future collateral attacks where a transcript is missing, the majority adopts the procedure outlined in <u>State v. Bentley</u>, 201 Wis. 2d 303, 548 N.W.2d 50 (1996). But <u>Bentley</u> is not a good fit because it did not consider the presumption against waiver of counsel.

¶42 Indeed, the <u>Bentley</u> court had no need to consider the presumption against waiver of counsel and to balance the competing presumptions as the court in <u>Baker</u> did. Which makes sense, for the simple reason that a claim that the right to counsel was not knowingly, intelligently, and voluntarily waived would never arise in a <u>Bentley</u> case.

¶43 The <u>Bentley</u> framework applies when an error <u>extrinsic</u> to the plea colloquy is raised. <u>State v. Howell</u>, 2007 WI 75, ¶74, 301 Wis. 2d 350, 734 N.W.2d 48. Examples of such an error are a claim of ineffective assistance of counsel or an assertion of coercion. <u>Id.</u> A claim that the right to counsel was not knowingly, intelligently, and voluntarily waived generally involves a defect in the colloquy itself and follows a completely different framework——if the defendant makes a prima facie case of a defective colloquy, then the burden is shifted to the State to demonstrate

6

that the plea was knowingly, intelligently, and voluntarily entered despite the inadequacy of the record at the time of the plea's acceptance. State v. Bangert, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986).

¶44 The presumption against waiver of counsel should retain vitality and should apply equally to defendants whose transcripts still exist and to those whose transcripts have been destroyed.[4] But without any modicum of analysis of the presumption against waiver of counsel, the majority changes its operation with regard to the subset of defendants who no longer have access to transcripts from their previous cases. The Baker court got it right, and we should not be so cavalierly departing from that decision.

---

[4] The majority posits that Parke, 506 U.S. 20, rejected the idea that the presumption against waiver of counsel applies to a collateral attack. Majority op., ¶19 n.14. Parke is distinguishable.

The defendant in Parke admitted that he was represented by counsel at the proceedings subject to collateral attack and presented no evidence in support of his motion other than his statement on the stand that he "could not remember whether he was specifically told about the rights he waived by pleading guilty." Parke, 506 U.S. at 24. He accordingly argued that "imposing even a burden of production on him is fundamentally unfair because a constitutionally protected right is in question." Id. at 31 (internal quotation omitted). The Parke court determined: "On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights." Id. at 30.

Clark is not asking this court to engage in a similar presumption. In contrast here, rather than contesting the burden, Clark accepts her burden of production, and indeed met it with an affidavit and testimony that establish a prima facie violation of the right to counsel.

7

III

¶45 The majority's second error lies in foisting upon Clark and similarly situated defendants a nearly impossible burden. Making things worse is the fact that defendants are saddled with this burden due to no fault of their own but merely because of the operation of document retention rules which likely are outdated given the reality of today's electronic filing and storage. Indeed, given the vast amounts of electronic data that can be stored in a relatively small physical area and the complications that may arise due to the destruction of case files, it may be time for this court to consider revisiting the record retention rules that caused the scenario we face here.

¶46 Decrying the hardship that would be placed on the State by applying the usual burden-shifting framework, the majority laments that "automatically shifting the burden to the State in the absence of a transcript would put the State 'in an untenable position.'" Majority op., ¶18 (citing Drexler, 266 Wis. 2d 438, ¶11 n.6). But what about the defendant? The majority's position puts the defendant in a similarly untenable position.

¶47 The State contends, and the majority apparently agrees, that Clark should be required to "show" that she did not waive counsel in the prior proceeding and that it is not enough for her to merely "say" it. But how is she supposed to "show" it without a transcript? Paying no mind, the majority besets a burden that is nearly impossible for a defendant to overcome.

¶48 Admittedly, Clark's testimony and affidavit are "self-serving." But in this type of case that is all we have. Assuming

8

that Clark is telling the truth (as apparently the circuit court determined) and that she did not validly waive her right to counsel in the prior proceeding, how else is she to convey that to the court other than by affidavit and her testimony? Yet the majority's approach casts aspersions on a defendant's testimony simply because of its source, in effect per se discounting the testimony of a defendant who may be vindicated by the transcript's corroboration of the defendant's memory.

¶49 And what did Clark do to have this steep hill placed in front of her? Nothing. The documents she needs to prove her case were destroyed not because of anything Clark did, but because of the passage of time and the force of somewhat arbitrary rules of government regulation.

¶50 Chief Justice Abrahamson placed a fine point on the problem with such a procedure in her dissent in State v. Negrete, 2012 WI 92, ¶58, 343 Wis. 2d 1, 819 N.W.2d 749 (Abrahamson, C.J., dissenting). There, Chief Justice Abrahamson wrote:

> Everyone agrees that it is unfortunate that there is no transcript of Negrete's 1992 plea hearing. But whose fault is that? If there is "fault," it lies somewhere in the judicial system, not with Negrete. Yet, the majority opinion places the burden caused by the missing transcript entirely on Negrete. Negrete is asked to prove by clear and convincing evidence that the warnings were not given despite not having had the opportunity to put forth any evidence beyond his written assertions that the required warnings were not given and he did not know the consequences of his plea. The majority places an insurmountable hurdle in front of Negrete.

Id. (internal citation omitted).

¶51 The same is true of Clark in this case, and of other defendants who will encounter destroyed files and deleted court

9

reporter's notes. A defendant should not be made to bear the burden of a problem created by document retention rules, and a defendant's testimony should not be immediately discounted just because the usual procedure would be too difficult for the State.

¶52 It is not hard to imagine the procedure the majority adopts today potentially visiting fundamental injustice upon a defendant who was denied the right to counsel in a previous proceeding. Without a transcript to provide corroboration and unable to demonstrate the violation of the right to counsel with anything other than the defendant's testimony, such a defendant is left only to hope in vain that anyone will listen. And the majority fosters summary dismissal of such fundamental entreaties.

¶53 For the foregoing reasons, I respectfully dissent.

¶54 I am authorized to state that Justices REBECCA FRANK DALLET and JILL J. KAROFSKY join this dissent.