**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 3, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2007-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF1333

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JONATHON L. SUNDERMEYER,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Marathon County: SCOTT M. CORBETT, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 STARK, P.J. Jonathon L. Sundermeyer appeals from a judgment convicting him, pursuant to a no-contest plea, of operating a motor vehicle with a prohibited alcohol concentration (PAC), as a fifth offense. *See* WIS. STAT.

§ 346.63(1)(b) (2023-24).[1] Sundermeyer challenges his conviction on two bases. First, Sundermeyer sought to collaterally attack his 2001 conviction for operating a motor vehicle while intoxicated (OWI), as a second offense, and to exclude it from consideration as a penalty enhancer, pursuant to WIS. STAT. § 346.65, on the basis that the plea colloquy pertaining to his waiver of the right to counsel in that case was defective. We conclude that pursuant to *State v. Ernst*, 2005 WI 107, 283 Wis. 2d 300, 699 N.W.2d 92, Sundermeyer has failed to allege that he did not know or understand the information that was allegedly missing from the plea colloquy at the time he waived his right to counsel and entered his plea. Therefore, he has not met his initial burden to show that his waiver of his right to counsel was defective.

¶2     Second, he argues that the circuit court erred by denying his motion to suppress the results of a blood draw, which was supported by a search warrant, because the warrant application was allegedly not supported by oath or affirmation. On that issue, we conclude that because the affiant relied on the observations and conclusions of another law enforcement officer, the affidavit in support of the search warrant was sufficiently sworn. Accordingly, we affirm Sundermeyer's judgment of conviction.

## BACKGROUND

¶3     On December 16, 2020, at 11:15 p.m., Marathon County Sheriff's Deputy Mou Xiong was dispatched to the Town of Johnson based on a report of a vehicle in the ditch on Fence Road. Dispatch also informed Xiong that the

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

reporting party had called back to report that a passerby had helped the vehicle out of the ditch and that the vehicle had continued east on Fence Road towards County Road E. Xiong proceeded east on Fence Road until he came upon Sundermeyer, who was stopped on the side of the road.

¶4 When Xiong made contact with Sundermeyer, he observed that Sundermeyer had glassy eyes, slurred speech, and an odor of intoxicants emanating from his vehicle. Sundermeyer admitted to drinking three Busch Light beers that evening, but he denied that he had been stuck in a ditch. Sundermeyer agreed to submit to field sobriety tests, and his performance on those tests showed indicia of intoxication. Xiong asked Sundermeyer if he would consent to a preliminary breath test, but he refused. Sundermeyer then resisted Xiong's attempts to place him under arrest. Eventually, Sundermeyer was placed in handcuffs and put in the back seat of Xiong's vehicle.

¶5 While still at the scene, Xiong read Sundermeyer the Informing the Accused form. *See* WIS. STAT. § 343.305(4). Sundermeyer failed to respond when asked if he would consent to a chemical test of his blood; instead, he asked to go to the bathroom three times, which Xiong eventually deemed a refusal. Xiong thereafter applied for and received a warrant to draw Sundermeyer's blood, which we will discuss in more detail below. Xiong transported Sundermeyer to Aspirus Wausau Hospital, where a lab technician drew Sundermeyer's blood, revealing a blood alcohol concentration of 0.173 g/100 mL.

¶6 The State charged Sundermeyer with one count each of OWI and operating with a PAC, both as fifth offenses. Sundermeyer filed multiple motions, including, as relevant here, a motion to suppress the blood test result, on the basis that the warrant was obtained with a defective affidavit pursuant to *State v. Tye*,

2001 WI 124, 248 Wis. 2d 530, 636 N.W.2d 473, and a motion and an amended motion collaterally attacking his 2001 conviction for second-offense OWI in Clark County Case No. 2001CT128.

¶7      The circuit court held an evidentiary hearing on the motions, during which Xiong testified.[2]  Sundermeyer did not testify at this hearing.  The court later denied the motions by written orders.[3]

¶8      Sundermeyer entered a no-contest plea to operating with a PAC, as a fifth offense, and the circuit court sentenced him to 1 year of initial confinement followed by 18 months' extended supervision.[4]  Sundermeyer appeals.  *See* WIS. STAT. § 971.31(10).

---

[2] The State notes that Sundermeyer's amended motion references an evidentiary hearing conducted on March 8, 2022, and document 55 of the appellate record is labeled as "Motion Hearing on 03-08-2022."  However, the date on the transcript is March 8, 2021.  We agree with the State that "[t]he 2021 date on that transcript appears to be an error."

[3] Sundermeyer's original motion collaterally attacking his 2001 conviction alleged that no transcript from the plea hearing existed.  The State was eventually able to present the transcript, and Sundermeyer "amended his initial motion to reflect the defects he discovered in the newly-discovered transcript."  In the circuit court's first decision and order on Sundermeyer's motions, entered on November 23, 2022, it held the amended motion "open for 60 days to allow both parties to develop the factual record further or schedule this matter for further proceedings."

The subsequent decision and order on Sundermeyer's amended motion collaterally attacking his 2001 conviction, entered on June 9, 2023, notes that the circuit court held a nonevidentiary hearing on April 11, 2023.  Based on the circuit court record, the hearing notice, and the exhibit list from that hearing, it appears that the hearing occurred on April 10 rather than April 11.  However, a transcript of that hearing does not appear to be included in the appellate record.  It is the appellant's responsibility to ensure that the record on appeal is complete, and any missing material is presumed to support the circuit court's ruling.  *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993).

[4] The OWI charge was dismissed outright by operation of law.  *See* WIS. STAT. § 346.63(1)(c).

**DISCUSSION**

¶9 On appeal, Sundermeyer renews his challenges before the circuit court. First, he argues that his 2001 conviction "should have been stricken as a penalty enhancer" because it "was entered in violation of *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997)." (Formatting altered.) Second, he contends that the search warrant authorizing his blood draw was invalid because it did not properly "establish the affiant's basis of knowledge for swearing an affidavit," which "violates the Fourth Amendment." (Formatting altered.) For the reasons that follow, we reject each of Sundermeyer's arguments.

## I. Collateral attack of the 2001 OWI conviction

¶10 The United States Supreme Court and the Wisconsin Supreme Court have held that a defendant "has a limited constitutional right" to collaterally attack[5] a prior OWI conviction where he or she "was not represented and did not knowingly, intelligently, and voluntarily waive the right to counsel." *State v. Clark*, 2022 WI 21, ¶10, 401 Wis. 2d 344, 972 N.W.2d 533. To establish a valid waiver of the right to counsel, the record must reflect that the defendant: "(1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him [or her], and (4) was aware of the general range of penalties that could have been imposed on him [or her]." *Klessig*, 211 Wis. 2d at 206. In *Ernst*, we held that a circuit court's failure to

---

[5] "[A] collateral attack in a prior conviction is 'an attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it.'" *State v. Ernst*, 2005 WI 107, ¶22 n.5, 283 Wis. 2d 300, 699 N.W.2d 92 (citation omitted).

conduct a ***Klessig*** colloquy in a prior proceeding in this state may "form the basis for a collateral attack" pursuant to the burden-shifting procedure utilized for claims challenging the validity of a defendant's guilty plea under ***State v. Bangert***, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). ***Ernst***, 283 Wis. 2d 300, ¶¶22-25; *see also* ***Clark***, 401 Wis. 2d 344, ¶¶14-16 (noting that the ***Bangert*** procedure applies when there is a transcript of the prior proceeding).

¶11 Under the ***Bangert*** procedure, the defendant must first identify a defect in the transcript of the plea colloquy in the prior proceeding. ***Clark***, 401 Wis. 2d 344, ¶14. Importantly, "[t]he defendant also 'must allege that he [or she] did not know or understand the information that should have been presented at the plea hearing.'" ***Id.***, ¶14 n.11 (citation omitted); *see also* ***Ernst***, 283 Wis. 2d 300, ¶25 (noting that a valid collateral attack requires the defendant to "point to facts that demonstrate that he or she 'did not know or understand the information which should have been provided' in the previous proceeding and, thus, did not knowingly, intelligently, and voluntarily waive his or her right to counsel" (citation omitted)). Once the defendant makes that prima facie showing, the burden shifts to the State to prove "by clear and convincing evidence that the defendant's plea was made knowingly, intelligently, and voluntarily." ***Clark***, 401 Wis. 2d 344, ¶14 (citation omitted). The State is entitled to an evidentiary hearing in order to meet its burden of proof. ***Ernst***, 283 Wis. 2d 300, ¶27.

¶12 Whether a defendant has made the required prima facie showing that he or she did not knowingly, intelligently, and voluntarily waive the right to counsel in an earlier proceeding is a question of law that we review de novo. ***Id.***, ¶10. Whether the State has demonstrated that the defendant, in fact, knowingly, intelligently, and voluntarily waived his or her right to counsel is also a question that we review de novo, while benefitting from the circuit court's analysis. ***Id.***

6

¶13    Here, Sundermeyer challenges his 2001 conviction on the fourth *Klessig* factor.  According to Sundermeyer, "[e]ven the most cursory review of the transcript from the [2001 case] reveals that the circuit court … failed to describe the general range of penalties to which Mr. Sundermeyer" was exposed, and, additionally, "there is not even a mention of, or reference to, a properly executed Plea Questionnaire in the colloquy which made Mr. Sundermeyer aware of the range of penalties to which he was exposed."   "Further exacerbating these problems," argues Sundermeyer, "is the fact that the Clark County Circuit Court never informed Mr. Sundermeyer that it was not obligated to accept the penalty recommendation suggested by the State and that it had the authority to depart from it."

¶14    The circuit court determined that Sundermeyer had failed to meet his burden to prove "that the *Klessig* colloquy that occurred in the 2001 [case] was insufficient."   The court reviewed the transcript of the plea colloquy in that case and took "judicial notice of the entirety of" the case file.  Based on its review, the court explained,

> In this case, no plea questionnaire was completed. However, the court heard the recommendation of the Assistant District Attorney and conducted a plea colloquy within the parameters set forth in *Klessig*.
>
> The defendant argues that the Court did not review the penalties for OWI second.  However, the transcript reflects that the Assistant District Attorney set forth the penalty recommended specifically on the record and made reference to BAC 0.22% and the relevant OWI sentencing guidelines.  The Criminal Complaint contained both the maximum and minimum penalties.  The Court specifically inquired whether the defendant understood the discussions he had had with the Assistant District Attorney and the defendant answered that he did.  The Court specifically found that the waiver of attorney was made freely, voluntarily and intelligently and that the defendant was competent to make the waiver.

On appeal, Sundermeyer argues that the court erred by "read[ing] far more into the [2001 plea] colloquy than that which is actually there," and he contends that the court's "assumptions so water-down the *Klessig* standard as to render it meaningless."

¶15     Based on our review of the record on appeal, like the circuit court, we conclude that Sundermeyer has failed to make the required prima facie showing that he did not knowingly, intelligently, and voluntarily waive his right to counsel in the 2001 case. Although Sundermeyer sufficiently alleges a plea colloquy defect, he has failed to affirmatively allege that at the time he waived his right to counsel he did not know or understand the general range of penalties that could have been imposed on him, information which should have been provided at the plea hearing.

¶16     Our supreme court's decision in *Ernst* represents the controlling precedent. There, "Ernst asked the circuit court to set aside his fourth OWI conviction, because he was 'not represented by counsel and the court did not take a knowing and voluntary waiver of counsel from the defendant.'" *Ernst*, 283 Wis. 2d 300, ¶26. The court concluded that "Ernst's attempt to initiate a collateral attack failed" because he "made no mention of specific facts that show that his waiver was not a knowing, intelligent, and voluntary one." *Id.* Instead, he "simply relied on the transcript and asserted that the court's colloquy was not sufficient" "because the [c]ourt did not address each of the four *Klessig* factors." *Id.* According to the *Ernst* court, a defendant "must do more than allege that 'the plea colloquy was defective' or the 'court failed to conform to its mandatory duties during the plea colloquy' to satisfy the standard for collateral attacks." *Id.*, ¶25 (citation omitted). The defendant must also "point to facts that demonstrate that he or she 'did not know or understand the information which should have

8

been provided' in the previous proceeding and, thus, did not knowingly, intelligently, and voluntarily waive his or her right to counsel." *Id.* (citation omitted).

¶17    We agree with the State that, like the defendant in *Ernst*, Sundermeyer has failed to allege evidence of an actual lack of knowledge. For example, Sundermeyer did not allege in his motion or his amended motion that he was unaware of the general range of penalties that he faced at the time he waived his right to counsel in the 2001 case. He also did not submit an affidavit with either the initial or amended motion averring the same. In fact, at the evidentiary hearing, the State made the following observation before Sundermeyer had filed his amended motion:

> If [the amended motion is] still going to be a collateral attack, I don't know what defense's new argument will be, but it will likely have to be evidentiary given the fact that with the filing they made they didn't make a prima facie showing. There was no affidavit or anything. So it's likely the defendant would have to testify if that's how it continues.

Nevertheless, Sundermeyer failed to submit an affidavit with his amended motion or otherwise aver or testify at either the March 8, 2022 or April 10, 2023 motion hearings that he did not know or understand the general range of penalties that he faced.[6]

¶18    Sundermeyer appears to misunderstand the purpose of a collateral attack on a prior conviction. The purpose is not to determine whether the circuit

---

[6] Although no transcript of the April 10, 2023 motion hearing was included in the appellate record, the circuit court's decision and order states that "[t]he Court heard oral arguments at a hearing held on April 1[0], 2023," but it does not otherwise state that the court heard any testimony. Thus, we presume that Sundermeyer did not testify at that hearing.

court erred during the colloquy. The purpose is to determine whether the defendant "knowingly, intelligently, and voluntarily waive[d] the right to counsel." *See Clark*, 401 Wis. 2d 344, ¶10; *cf. State v. Brown*, 2006 WI 100, ¶¶62-65, 293 Wis. 2d 594, 716 N.W.2d 906 (stating that "[t]he ultimate issue to be decided at the hearing is whether the defendant's plea was knowing, intelligent, and voluntary, not whether the circuit court erred," and that "[i]n the absence of a claim by the defendant that he lacked understanding with regard to the plea, any shortcoming in the plea colloquy is harmless"). Given that Sundermeyer has only alleged the existence of a defect in the 2001 plea colloquy, he has failed to satisfy his initial burden under *Ernst*.[7]

¶19    In his reply brief, Sundermeyer asserts that "the State's focus on the alleged deficiency in Mr. Sundermeyer's pleading overlooks important aspects of his motion," that the "the 'prima facie' burden is an exceedingly low one," and that his "case presents with more proof of defective plea procedures than did Ernst's." (Formatting altered.) According to Sundermeyer, because he

> established through the court record—and through the documents *missing* therefrom—that he could not have been 'aware' of the range of penalties since they were *never* reviewed by the circuit court or addressed on a valid Plea Questionnaire, he has made a *prima facie* showing that there has been a *Klessig* violation in his case.

¶20    Essentially, Sundermeyer is suggesting that proof of a deficient plea colloquy—i.e., proof that the circuit court did not tell the defendant certain

---

[7] We note that we recently released our decision in *State v. Christianson*, No. 2024AP1884-CR, slip op. recommended for publication (WI App Feb. 12, 2026), which also addressed a collateral attack on prior OWI convictions. Although the holding in *Christianson* is not dispositive, it is instructive because it demonstrates how the defendant established a prima facie case that his right to counsel was violated during three prior OWI cases. *Id.*, ¶¶21-25, 36-39, 56-59.

information—is sufficient to prove that a defendant could not have known the information. Our supreme court certainly could have determined that evidence of a plea colloquy defect *on its own* is sufficient to establish a prima facie showing, but that is not the law. *See **Ernst***, 283 Wis. 2d 300, ¶25. The lack of a plea questionnaire on its own also does not establish that the defendant did not know or understand the information. Both examples merely establish that the defendant was not told the information, which is, again, by itself, insufficient. ***Ernst*** is clear that the defendant must both identify specific deficiencies in the plea colloquy *and* provide some evidence that he or she did not know or understand the information that should have been provided. Because Sundermeyer has not done so, the burden does not shift to the State. ***Ernst***'s holding is not inapplicable here merely because, as Sundermeyer argues, he provided "more detail[]" as to the plea deficiencies.

¶21 Finally, Sundermeyer requests that if we conclude that he has failed to meet his initial burden, we should remand this case to the circuit court "to permit him to file an affidavit in support of his motion," as our supreme court did in ***Ernst***. *See **id.***, ¶9. Wisconsin law does not authorize such relief. Collateral attacks are not vehicles for piecemeal litigation. The defendant is required to present all grounds for relief in his or her initial motion. *Cf.* WIS. STAT. § 974.06(4); ***State v. Escalona-Naranjo***, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994); ***Schill v. Wisconsin Rapids Sch. Dist.***, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court to be raised on appeal as a matter of right. If the issue is not preserved, an appellate court may consider the issue forfeited.").

¶22 ***Ernst*** has been the law for over 20 years; thus, Sundermeyer cannot argue that he was surprised by its requirements. Allowing a defendant to refile an affidavit solely to satisfy ***Ernst*** after failing to do so initially would undermine all of the above principles and invite precisely the sort of serial litigation that we seek to prevent.[8] Sundermeyer failed to meet the threshold requirements for a collateral attack on his 2001 OWI conviction, and his request to return to the circuit court to relitigate the issue is denied.

## II. Oath or affirmation in the search warrant affidavit

¶23 Sundermeyer next argues that his blood test results should have been suppressed because the warrant that law enforcement obtained to draw his blood was invalid, as it was not supported by oath or affirmation of a deputy who was at the scene of his investigative stop. "Whether evidence should be suppressed is a question of constitutional fact subject to a two-step inquiry." ***State v. Wilson***, 2022 WI 77, ¶17, 404 Wis. 2d 623, 982 N.W.2d 67. We will uphold a circuit court's factual findings unless clearly erroneous, but we independently apply constitutional principles to those facts. ***Id.***, ¶18.

¶24 Both the United States Constitution and the Wisconsin Constitution provide that a search warrant may be issued upon probable cause supported by an oath or affirmation.[9] U.S. CONST. amend. IV; WIS. CONST. art. 1, § 11; *see also*

---

[8] Furthermore, final judgments of conviction are entitled to a presumption of regularity, including with respect to constitutional waivers. ***Ernst***, 283 Wis. 2d 300, ¶31 n.9; ***Parke v. Raley***, 506 U.S. 20, 29-30 (1992).

[9] As relevant here, "blood tests to determine alcohol concentration are 'searches' for Fourth Amendment purposes." ***State v. Dieter***, 2020 WI App 49, ¶9, 393 Wis. 2d 796, 948 N.W.2d 431 (citation omitted).

WIS. STAT. § 968.12(2) ("A search warrant may be based upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter or under sub. (3)(d), showing probable cause therefor."). "The purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth." *Tye*, 248 Wis. 2d 530, ¶19. However, "[t]here are no rigid requirements or magic words. [The oath or affirmation requirement] is a matter of substance, not form." *State v. Moeser*, 2022 WI 76, ¶28, 405 Wis. 2d 1, 982 N.W.2d 45.

¶25 "An oath or affirmation to support a search warrant reminds both the investigator seeking the search warrant and the magistrate issuing it of the importance and solemnity of the process involved." *Tye*, 248 Wis. 2d 530, ¶19. It "protects the target of the search from impermissible state action by creating liability for perjury or false swearing for those who abuse the warrant process by giving false or fraudulent information" and "preserves the integrity of the search warrant process and thus protects" fundamental constitutional rights. *Id.* (footnotes omitted). Therefore, our supreme court recognized in *Tye* that "when no sworn testimony exists to support a search warrant, then the warrant is void." *Id.*, ¶13.

¶26 As noted above, Xiong applied for a warrant after Sundermeyer refused to voluntarily submit to a blood draw, which a Marathon County Circuit Court judge granted. However, the affidavit submitted in support of the warrant was not signed by Xiong but was instead signed by Deputy Christopher Gazda and notarized by Xiong's lieutenant, Ted Knoeck. According to Xiong's testimony at the motion hearing, he "completed the [warrant] affidavit" and then forwarded it to his lieutenant for review and authorization by a judge. Xiong explained that Gazda signed the affidavit, had it notarized, and later delivered the signed warrant

to him. Gazda was not "present at the scene" when Sundermeyer was stopped and placed under arrest, but he was present at the hospital.

¶27 Sundermeyer argues on appeal that the circuit court erred by denying his motion to suppress because Xiong, the investigating officer, never swore or affirmed to the notary that the statements in the affidavit were true and accurate. Instead, Gazda signed the affidavit, which contained the following averment:

> Affiant has personal knowledge that the contents of this application and supporting affidavit, together with the statements made therein, are true. Affiant states that this affidavit references and in part relies upon the observations, reports and/or conclusions of fellow peace officers whose reports Affiant believes to be truthful and reliable and has found them reliable in the past.

According to Sundermeyer, "[t]he first portion of the foregoing averment is clearly a falsehood because" Xiong testified that Gazda was not present at the scene, "so he could not have directly observed any of the averments made in the affidavit." Sundermeyer also observes that Xiong "admitted that he was 'not sure' who was swearing to the information contained within the affidavit." As to whether Gazda "relied upon" Xiong's observations or conclusions, Sundermeyer contends that "there is no foundation which establishes that Deputies Gazda and Xiong ever spoke about Mr. Sundermeyer's circumstances prior to [Lieutenant] Knoeck forwarding the affidavit to the on-call judge" and that "[w]ithout this nexus, there is no reason to believe that the [above] averment … is true."

¶28 In support of his argument, Sundermeyer cites *Tye*, where "the city of Racine police department drafted an affidavit in support of a search warrant for a residence occupied by the defendant." *Id.*, ¶4. The investigator presented the affidavit to an assistant district attorney for review and approval and to a Racine County Circuit Court judge, who issued the warrant. *Id.*, ¶5. Neither official

14

realized that the investigator had failed "to sign and swear to the truth of the affidavit written in support of the search warrant and failed to give sworn testimony attesting to the accuracy of the statements in the affidavit." *Id.* Our supreme court held "that the total absence of any statement under oath to support a search warrant violates the explicit oath or affirmation requirement of both the federal and state constitutions and that the warrant therefore is constitutionally infirm," and, as a result, "the evidence seized must be suppressed." *Id.*, ¶3. According to Sundermeyer, "[l]ike *Tye*, the investigating officer in this case, Deputy Xiong, never swore or affirmed to the notary that the statements in the affidavit were true and accurate."

¶29    We conclude that the circuit court did not err by denying Sundermeyer's motion to suppress. The record contains a sworn affidavit from Gazda that sets forth probable cause for a warrant to draw Sundermeyer's blood. The affidavit expressly states that Gazda relied in part on "the observations, reports and/or conclusions of fellow peace officers whose reports Affiant believes to be truthful and reliable." The affidavit bears Gazda's signature and was notarized. The warrant-issuing judge reviewed the affidavit, determined that probable cause existed, and issued the warrant. That procedure satisfies *Tye*.

¶30    Sundermeyer's argument rests on the premise that law enforcement cannot apply for a warrant based on information gathered by other officers. However, beyond *Tye*, Sundermeyer fails to present any legal authority in support of this proposition. While he claims that "[n]o case could be more clearly on point," the facts in *Tye* involved "the total absence of any statement under oath to support a search warrant." *Id.*, ¶¶3, 5. Here, by contrast, the warrant *was* supported by a sworn affidavit. The cases are therefore materially different, and *Tye* does not support Sundermeyer's claim.

¶31    Instead, Wisconsin courts have determined, in other contexts, that "[t]he police force is considered as a unit." *See, e.g.*, **State v. Mabra**, 61 Wis. 2d 613, 625, 213 N.W.2d 545 (1974); *see also* **United States v. Hensley**, 469 U.S. 221, 231-32 (1985) (quoting the United States Court of Appeals for the Ninth Circuit for the proposition "that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information" (citation omitted)).    We look to the totality of law enforcement's knowledge when viewing probable cause to arrest.    Accordingly, we discern no basis to conclude that an officer may not rely on the observations, reports, or conclusions of a fellow law enforcement officer when submitting an affidavit in support of a warrant.[10]

¶32    To the extent that Sundermeyer is instead arguing that Gazda did not actually know the information to which he swore in the affidavit, his challenge fails.  In support of his position, Sundermeyer points to Xiong's testimony that he

---

[10] Sundermeyer also points to **United States v. Hyten**, 5 F.3d 1154, 1156 (8th Cir. 1993), where "the officer who took the oath affirming the affidavit was not the officer who the affidavit named as the affiant."  The court upheld the validity of the warrant, treating the officer who was "the named affiant" as "the functional equivalent of a reliable informant" and noting that the officers had worked together "on the investigation, and [they] read and discussed the affidavit." *Id.* at 1155-56.  According to Sundermeyer, "unlike **Hyten**, there is nothing in the record to indicate that Deputy Gazda was a part of the investigation or that he read and discussed the affidavit with Deputy Xiong."

First, we are not bound by holdings of the federal courts of appeals.  *See* **State v. Mechtel**, 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993).  Second, we are not persuaded that **Hyten** supports a different result here.  Gazda *was* "part of the investigation" because he delivered the warrant to Xiong at the hospital so that law enforcement could continue to investigate and collect evidence to charge Sundermeyer.  Finally, we agree with the State that nothing in **Hyten** can be read "as *requiring* a substantive conversation between the officer swearing the affidavit and one other specific officer."  (Emphasis added.)

was "not sure" who swore to the information in the affidavit. That testimony, however, is not probative. Xiong's uncertainty about Gazda's knowledge does not establish what Gazda did or did not know at the time he swore to the affidavit. To the extent Sundermeyer wished to challenge Gazda's knowledge or the accuracy of the statements in the affidavit, he failed to obtain Gazda's testimony to properly challenge the basis for the warrant. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *State v. Mann*, 123 Wis. 2d 375, 388-89, 367 N.W.2d 209 (1985).

¶33 At bottom, the record is clear that probable cause supporting the warrant was provided under oath or affirmation. Therefore, the affidavit in this case met constitutional requirements, and the circuit court did not err by denying Sundermeyer's motion to suppress.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.